### MASSACHUSETTS AGRICULTURAL COLLEGE *vs.* GEORGE A. MARDEN.

Suffolk.    January 15, 18, 1892. — March 29, 1892.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Act of Congress — Claimants to Fund.*

Where the Massachusetts Agricultural College and the Massachusetts Institute of Technology were claimants to a fund paid to the Treasurer and Receiver General, conformably to the provisions of an act of Congress approved August 30, 1890, entitled "An act to apply a portion of the proceeds of the public lands to the more complete endowment and support of the colleges for the benefit of agriculture and the mechanic arts established under the provisions of an act of Congress approved July second, eighteen hundred and sixty-two," it was *held* that it was for the Legislature to determine to which of the claimants it would give the fund, or whether it would give a part of it to one and a part to the other; and that the Treasurer and Receiver General had no right to pay out the fund until he was directed so to do by the State.

PETITION for a writ of mandamus to compel the respondent to pay over to the treasurer of the petitioner a fund received by the respondent under the act of Congress approved August 30, 1890. Hearing before *Holmes,* J., who reserved the case for the determination of the full court.

The case was argued at the bar in January, 1892, and afterwards was submitted on the briefs to all the judges except *Field,* C. J.

*F. E. Snow,* (*W. A. Gaston* with him,) for the petitioner.
*A. L. Lowell,* for the respondent.

KNOWLTON, J.   By an act of Congress approved August 30, 1890, entitled " An act to apply a portion of the proceeds of the public lands to the more complete endowment and support of the colleges for the benefit of agriculture and the mechanic arts established under the provisions of an act of Congress approved July second, eighteen hundred and sixty-two," it was provided " That there shall be, and hereby is, annually appropriated, out of any money in the treasury not otherwise appropriated, arising from the sales of public lands, to be paid as hereinafter provided, to each State and Territory for the more complete endowment and maintenance of colleges for the benefit of agriculture and the mechanic arts now established, or which may be hereafter established, in accordance with an act of Congress approved July second, eighteen hundred and sixty-two, the sum of fifteen thousand dollars for the year ending June thirty, eighteen hundred and ninety, ánd an annual increase of the amount of such appropriation thereafter for ten years by an additional sum of one thousand dollars over the preceding year, and the annual amount to be paid thereafter to each State and Territory shall be twenty-five thousand dollars, to be applied only to instruction in agriculture, the mechanic arts, the English language, and the various branches of mathematical, physical, natural, and economic science, with special reference to their applications in the industries of life, and to the facilities for such instruction," this appropriation being subject to certain conditions in cases where any distinction is made in the admission of students by reason of race or color.

The second section of the act contains this provision : " The sums hereby appropriated to the States and Territories for the further endowment and support of colleges shall be annually paid on or before the thirty-first day of July of each year, by the Secretary of the Treasury, upon the warrant of the Secretary of the Interior, out of the treasury of the United States, to the State or Territorial treasurer, or to such officer as shall be designated by the laws of such State or Territory to receive the same, who shall, upon the order of the trustees of the college, or the institution for colored students, immediately pay over said sums to the treasurers of the respective colleges or other institutions entitled to receive the same, and such treasurers

shall be required to report to the Secretary of Agriculture and to the Secretary of the Interior, on or before the first day of September of each year, a detailed statement of the amount so received, and of its disbursement.   The grants of moneys authorized by this act are made subject to the legislative assent of the several States and Territories to the purpose of said grants; provided, that payments of such instalments of the appropriation herein made as shall become due to any State before the adjournment of the regular session of Legislature meeting, next after the passage of this act shall be made upon the assent of the Governor thereof, duly certified to the Secretary of the Treasury."

By § 4 of said act it was provided " That on or before the first day of July in each year, after the passage of this act, the Secretary of the Interior shall ascertain and certify to the Secretary of the Treasury as to each State and Territory whether it is entitled to receive its share of the annual appropriation for colleges, or of institutions for colored students, under this act, and the amount which thereupon each is entitled, respectively, to receive.   If the Secretary of the Interior shall withhold a certificate from any State or Territory of its appropriation the facts and reasons therefor shall be reported to the President, and the amount involved shall be kept separate in the treasury until the close of the next Congress, in order that the State or Territory may, if it should so desire, appeal to Congress from the determination of the Secretary of the Interior.   If the next Congress shall not direct such sum to be paid it shall be covered into the treasury.   And the Secretary of the Interior is hereby charged with the proper administration of this law."

Under this act, a payment of $15,000 for the year ending June 30, 1890, has been made out of the treasury of the United States to the respondent, who is the Treasurer and Receiver General of Massachusetts, and the principal question presented by this petition is what disposition shall be made of the money in his hands.

This first instalment of $15,000 became due before the adjournment of the regular session of the Legislature meeting next after the passage of the act, and, in reply to a communication from the Secretary of the Interior, the Governor, in behalf of the Commonwealth, assented to the purpose of the grant, as

provided in § 2.   In answering a series of questions contained in the letter of the Secretary of the Interior, he showed that the petitioner was a college established and maintained in accordance with the act of Congress of July 2, 1862, and it thereby appeared that the State was entitled to have the money paid over to its Treasurer and Receiver General.   There was nothing in the reply of the Governor to indicate that there was more than one such college in this Commonwealth.

The Massachusetts Institute of Technology has been made a party to these proceedings, and in its behalf it is now contended that it is an institution which comes within the provisions of the act of July 2, 1862, and that it ought to receive from the respondent a part of this money.

Our first inquiry is whether it is such an institution as is contemplated by the act, and whether the establishment and maintenance of it would entitle the State to receive the money if the Massachusetts Agricultural College were not in existence. By the terms of the act, each of the States was to receive certain public lands, the proceeds of which were to constitute a perpetual fund, " the interest of which shall be inviolably appropriated, by each State which may take and claim the benefit of this act, to the endowment, support, and maintenance of at least one college where the leading object shall be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agriculture and the mechanic arts, in such manner as the Legislatures of the States may respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life."

The Massachusetts Institute of Technology was incorporated by the St. of 1861, c. 183, § 1, "for the purpose of instituting and maintaining a society of arts, a museum of arts, and a school of industrial science, and aiding generally, by suitable means, the advancement, development, and practical application of science in connection with arts, agriculture, manufactures, and commerce."   In pursuance of the requirements of the statute, a school of industrial science was afterwards established, and through the school and otherwise the Institute has been carrying out the purpose of its incorporation.   All that is required

by the act of Congress is that the leading object of the institution shall be to teach " such branches of learning as are related to agriculture and the mechanic arts," " without excluding other scientific and classical studies." Under this statute agriculture is given no preference over the mechanic arts. A proper school of industrial science would be expected to give such instruction as the statute calls for, especially when it aims at " the advancement, development, and practical application of science in connection with arts, agriculture, manufactures, and commerce." Looking at the object of this corporation as defined by its charter, it would seem as if its corporators had anticipated in our State the purpose of Congress, embodied in the statute which we are considering. This seems to have been the view of our legislators of that time ; for having by the St. of 1863, c. 166, accepted the grant of Congress, and created " a fund for the promotion of education in agriculture and the mechanic arts," they then, by the St. of 1863, c. 186, granted to the Massachusetts Institute of Technology one third of the income of the fund, and at the same time amended its charter so as to require it to teach military tactics in conformity with the provisions of the act of Congress, and made the Governor, the Chief Justice of the Supreme Judicial Court, and the Secretary of the Board of Education each a member *ex officio* of the government of the Institute. They also required the Institute to furnish to the Governor and Council a copy of the annual report of its operations. The Institute accepted the grant and the amendment to its charter, and established the school of industrial science. Afterwards, in the same year, by the St. of 1863, c. 220, two thirds of the income of the fund was granted to the Massachusetts Agricultural College, which was then incorporated to receive it. Since then, the income of this fund has been annually divided between the two corporations in the proportion of two thirds to the petitioner and one third to the Massachusetts Institute of Technology. This is the strongest possible legislative declaration that both of the corporations are within the description of the Act of Congress. If they were not, the appropriation of any part of the income to the Institute of Technology would be a violation of the sacred trust under which the bounty of the general government was received. It is believed

that few of the institutions which are receiving the income of funds established under this act are in their organization so near as this is to the very language of the act. They could hardly be nearer without using the precise words of the statute.

The claim of this corporation is not affected by the fact that its charter was granted prior to the passage of the act of Congress. That act contemplates the endowment of colleges already in existence, as well as of those afterwards to be established. All that is required is that the college shall be of the prescribed kind. The grant is to be appropriated " to the endowment, support, and maintenance of at least one college," etc., not necessarily to the establishment of a new college. This point was involved in the decision in *Liggett* v. *Ladd*, 17 Oregon, 89, and in an opinion of the Supreme Court of Rhode Island, holding that Brown University is entitled to receive the benefit of the fund. *In re Agricultural Funds*, Index H H, Dec. Sup. Ct. R. I., Oct. Term, 1890, 159.

Nor can it be held that the fund is necessarily to be for the benefit of only one college in each State. The act of 1862 plainly contemplates the possible existence of more than one college of the kind described in each State. In § 4 the grant is said to be for the endowment " of at least one college." Under § 5, cl. 3, each State is to " provide, within five years, at least not less than one college." The acts of 1866 (39th Cong. 1st Sess. c. 209), of 1872 (42d Cong. 2d Sess. c. 55, 42d Cong. 3d Sess. cc. 2 and 50), and of 1887 (49th Cong. 2d Sess. c. 314), all show that under the act of 1862 there may be two or more colleges in each State entitled to share in the funds.

The act of 1890 provides " for the more complete endowment and maintenance of colleges for the benefit of agriculture and the mechanic arts now established, or which may be hereafter established in accordance with an act of Congress approved July 2, 1862." This includes all such colleges, and there is nothing in it to restrict the States in the use of the money to one college in each State. They are colleges established " in accordance with " the act, not necessarily under it and subsequent to it. The benefit of the fund is confined to one college for white students only in those States where a separate institution is maintained for colored students, and in those, with

a view to an equitable distribution between the two classes, a division is made between one college for white students and one institution for colored students.

The money in the hands of the Treasurer and Receiver General is the property of the State, held under the law for a particular use and for no other. Whether the State has or has not power to control it in his hands otherwise than to direct the use of it in conformity with the act of Congress, it is clear that neither the State nor the respondent has a legal right to divert it, and that, if there are different ways in which it may be used under the provisions of the statute of the United States, the State alone, acting by its Legislature, can choose between them. *Cornell University* v. *Fiske,* 136 U. S. 152, 203. *People* v. *Davenport,* 117 N. Y. 549. That the Secretary of the Interior, when he drew his warrant for the payment to the respondent, knew of but one college that could properly receive the money is immaterial; for the appropriation by Congress was to the State, and the payment to the respondent was for the use of the State, and the only limitation on the right of the State is to use it for the more complete endowment and maintenance of a college, or of the colleges, established in accordance with the act of 1862. The duty of the Secretary was performed when he determined that the State was entitled to it, and drew his warrant for the payment of it. It should be added that that part of the first section which says that the money shall be "applied only to instruction in agriculture, the mechanic arts," etc., may prevent the use of it in some departments of instruction existing in colleges established in accordance with the act of 1862; for by the terms of the act they are to have a "leading object, . . . without excluding other scientific and classical studies." It is possible that some kinds of classical instruction furnished by some of these colleges cannot be paid for from money received under the act of August 30, 1890. On this point we give no opinion.

The Legislature should determine to which of the two claimants it will give the fund in the hands of the respondent, or whether it will give a part of it to one and a part to the other. The respondent has no right to pay it out until he is directed so to do by the State. In the opinion of a majority of the court, the petition must therefore be dismissed.

*Petition dismissed.*