ASSESSORS OF LANCASTER *vs.* PERKINS SCHOOL
(and two companion cases between the same parties).

Suffolk.    October 5, 1948. — December 1, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Taxation*, Real estate tax: exemption; Personal property tax: exemption.  *Charity.  Words*, "Benevolent," "Others."

The mere fact that a corporation, incorporated "to carry on one or more institutions for the education and care of retarded or badly adjusted children and of others requiring special educational or medical treatment," charged fees in conducting such an institution did not prevent its property used in the conduct thereof being exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third, provided no profits were distributed to members or stockholders or used for other than charitable purposes.

In the charter of a corporation, incorporated "to carry on one or more institutions for the education and care of retarded or badly adjusted children and of others requiring special educational or medical treatment," the word "others" meant other persons and not merely other children; the mere fact that some adults received the benefits of a school conducted by the corporation did not destroy its exemption from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third, respecting its property used in the conduct thereof.

No error appeared in a decision by the Appellate Tax Board that a corporation, incorporated "to carry on one or more institutions for the education and care of retarded or badly adjusted children and of others requiring special educational or medical treatment" and conducting a school of that character, was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third, respecting its personal property used in the conduct of the school and real estate owned and occupied by it for the purposes thereof, where there was evidence that admission to the school was open to the general public and that the full tuition or any tuition at all was not always paid or demanded, and the board found that none of the income or profits of the school had been divided among the members or stockholders of the corporation or used or appropriated for other than literary, educational, benevolent, charitable or religious purposes, and concluded that it was a literary and educational institution.

APPEALS from decisions of the Appellate Tax Board.

*A. A. Gelinas,* *(B. D. Ward* with him,) for the assessors of Lancaster.

*A. F. Richard,* for the taxpayer.

LUMMUS, J.   The assessors of Lancaster assessed the Perkins School, the taxpayer, for the year 1945, upon a motor vehicle, other personal property, and real estate in Lancaster. The taxes were paid. On appeal from a decision of the assessors denying an abatement of these taxes, under G. L. (Ter. Ed.) c. 58A, § 7, as amended, the Appellate Tax Board held that the property assessed was exempt from taxation. The assessors appealed to this court under G. L. (Ter. Ed.) c. 58A, § 13, as amended.

The section last cited provides that "The decision of the board shall be final as to findings of fact" and that the appeal shall be limited "to matters of law." *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 383, where it is said, "Such findings cannot be reviewed by this court unless vitiated by error in an 'issue of law' raised before the board. But the question whether a finding of fact is warranted by the facts agreed is a matter of law." See also *Brockton Knights of Columbus Building Association, Inc.* v. *Assessors of Brockton,* 321 Mass. 110, 113.

The ground upon which the board held that the property was exempt from taxation was that it fell within G. L. (Ter. Ed.) c. 59, § 5, Third, which exempts "Personal

property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated in the commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated . . . ." It is not contended that the taxpayer was a temperance society, nor that it was literary or scientific except so far as it was an educational institution. *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 386, 387. The word "benevolent" in the statute is no broader than "charitable." *Boston Chamber of Commerce* v. *Assessors of Boston,* 315 Mass. 712, 716. The statute (§ 5, Third) goes on to qualify the exemption by providing in subsection (a) that "If any of the income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt." Since taxation is the rule, and exemption the exception, it is settled that a taxpayer has the burden of proving himself within some statutory exemption. *Boston Chamber of Commerce* v. *Assessors of Boston,* 315 Mass. 712, 716. *Brockton Knights of Columbus Building Association, Inc.* v. *Assessors of Brockton,* 321 Mass. 110, 114.

From the reported evidence, the Appellate Tax Board made findings substantially as follows. The taxpayer was incorporated in Massachusetts in 1934 "to carry on one or more institutions for the education and care of retarded or badly adjusted children and of others requiring special educational or medical treatment," and "to exercise any and all other powers which may be exercised by a corporation formed for any educational, charitable, benevolent, or medical purpose under General Laws, Chapter 180, or any amendment thereof or addition thereto." Prior to its incorporation, the Perkins School was privately owned and conducted for several years by Dr. Franklin H. Perkins. Upon its incorporation, the school received from Dr. Perkins a transfer of title to money, personal property and real estate appraised at about $125,000, and gave Dr. Perkins a note secured by a mortgage of the real estate for $77,172.35. No

interest has ever been paid on the note, but $2,262.47 has been paid on the principal.

The school consists of a number of buildings located on one hundred eight acres of land. Dr. Perkins lives there, and teachers and pupils live on the premises. Cattle, sheep and poultry are kept. There are about sixty pupils, ranging in age from five to thirty years, with two older. They spend from eight to twenty years in the school. None has any mental or nervous disease, but all are mentally deficient. See *New England Sanitarium* v. *Stoneham*, 233 Mass. 171. There are nine teachers and five governesses. The charges made by the taxpayer vary according to the financial ability of the pupil. Some pupils pay nothing, but work; others pay from $500 to $2,600 a school season. The aggregate tuition payments for 1943, 1944 and 1945 did not equal the expenses of the school, but additional income received resulted in a small profit. None of the income or profits of the taxpayer has been divided or paid out or used or appropriated for other than literary, educational, benevolent, charitable or religious purposes.

It appeared that the taxpayer has received gifts of $60,000 which were spent for buildings, contributions of several thousands of dollars in money, and contributions of various articles of personal property. Dr. Perkins receives an annual salary of $6,000, in addition to the living expenses of himself and his family.

In conclusion, the board found that on January 1, 1945, the taxpayer was a literary and educational institution, that it owned the real estate and occupied it for the purposes for which it was incorporated, that the personal property in question was used in the conduct of the school, and that its property was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third.

The assessors contend that the taxpayer "is not a literary, benevolent, charitable or scientific institution, but rather a private home refuge, an institution privately operated for the benefit of a select few." But there was evidence, which the board could believe, that admission to the school was open to the general public, and that the full tuition or

indeed any tuition at all was not always paid or demanded. Several pupils paid nothing, but did some work instead. The fact that an institution charges fees for its services does not make it other than charitable, provided no profits are distributed to members or stockholders. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 254. *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 389, 390.

The taxpayer was incorporated for the benefit of "retarded or badly adjusted children and of others requiring special educational or medical treatment." We think that the word "others" means other persons, and not merely other children, and that the fact that some adults receive the benefits of the school does not destroy its exemption. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 7, 8.

Since we find no error in the decision of the board, in each case an order is to be entered granting an abatement of the entire tax in accordance with that decision, and the treasurer of the town of Lancaster is ordered to repay to the taxpayer the amount of the tax with interest at the rate of four per cent per annum from the date of payment, together with the costs of this appeal. *Assessors of Boston* v. *Boston Elevated Railway,* 320 Mass. 588, 598.

*So ordered.*