INDUSTRIAL TECHNICAL SCHOOLS INC. *vs.* COMMISSIONER OF
EDUCATION.

Suffolk.   October 7, 1953. — December 9, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Trade School.   Education.   Statute,* Construction.   *Words, "Endowed."*

Where a business corporation owned by two stockholders and conducting
a trade school transferred its real estate of substantial value pur-
portedly "as an endowment" and also all its other assets, and its
stockholders transferred their stock, to a new corporation organized
under G. L. (Ter. Ed.) c. 180 and controlled by the same two persons,
which assumed the liabilities of the old corporation and gave large
notes to those persons as consideration for the transfer of the old
corporation's assets and subsequently operated the school with its
revenue derived almost entirely from tuition paid by the students,
the new corporation was not "an endowed school" within G. L. (Ter.
Ed.) c. 93, § 21A, inserted by St. 1941, c. 583, § 2, by reason of the
conveyance of the real estate to it, since that was not in reality an
endowment but a purchase by it, nor by reason of a gift made to it
of money to be held as a permanent fund and the income thereof to
be applied to the purposes of the school where the amounts of the
fund and the income were too small to affect the financial structure of
the school or its operation.   [625]

A literal construction of a statute is not to be adopted if it will defeat
the plain purpose of the statute and if another construction avoiding
such a result is reasonably possible.   [627]

BILL IN EQUITY for a declaratory decree, filed in the
Superior Court on June 5, 1952.

The plaintiff appealed from a final decree entered after
hearing by *Brogna, J.*

*Theodore A. Glynn, Jr.,* for the plaintiff.

*Joseph H. Elcock, Jr.,* Assistant Attorney General, for the
defendant.

RONAN, J.   This is an appeal from a final decree reciting
that the trade school conducted by the plaintiff is not
"an endowed school which offers approved courses without

profit" within the provisions of G. L. (Ter. Ed.) c. 93, § 21A, inserted by St. 1941, c. 583, § 2.

The case was submitted to the judge on an agreement as to evidence together with various exhibits. *King Features Syndicate, Inc.* v. *Cape Cod Broadcasting Co. Inc.* 317 Mass. 652. *Lapp Insulator Co. Inc.* v. *Boston & Maine Railroad,* *ante,* 205. The judge accepted as true certain statements contained in this agreement, and in addition thereto he found other facts which were different from and inconsistent with some of the evidence set forth in the agreement.

The facts as finally determined may be summarized. A corporation of the same name as the plaintiff was organized as a business corporation under G. L. (Ter. Ed.) c. 155 a few years prior to 1948. It purchased, in 1946, a vacant schoolhouse from the city of Boston for $12,000, built an addition to it, and in its books carried such real estate at a total value of $33,084. It conducted a trade school on the premises until January 2, 1948. At that time its capital stock and all of its property, both real and personal, were transferred to the plaintiff. The plaintiff was incorporated in November, 1947, under G. L. (Ter. Ed.) c. 180 regulating the organization of corporations for educational, charitable, benevolent, and religious purposes, and also for certain other purposes.

The old corporation was owned and controlled by one Hoffman and one Galvin, its only stockholders. The stockholders voted to convey the real estate to the plaintiff "as an endowment and to be used exclusively for the purpose of the school rent free." The fair value of this realty was about $100,000. The stock of the old corporation was practically worthless after the conveyance of the real estate. The plaintiff agreed to assume all liabilities of the old corporation. These liabilities exceeded $60,000. The plaintiff gave its note to Hoffman for $71,450 bearing interest at 6% payable in twenty years, one twentieth of the principal to be paid annually. It gave a similar note to Galvin. Payments on both notes in accordance with their tenor are made out of the profits of the plaintiff. The assumption of liabilities of the old corporation and the giving of these notes consti-

tuted the consideration for the transfer of all the assets from the old to the present corporation. The latter corporation like the old one is controlled by Hoffman and Galvin as trustees. The other trustee is merely a straw for them. Hoffman, the president, and Galvin, the treasurer, each receive a salary of $10,000 for administrative services.

The plaintiff about May 15, 1952, received a gift of $15,000 to be held as a permanent fund the income therefrom to be used for the purposes of the school. The fund is known as the "John Hoffman Memorial Endowment" and has been deposited in that name in a Boston bank.

The latest income sheet which was made an exhibit discloses that practically the only source of revenue was the tuition paid by the students. The receipts exceeded the expenses by more than $33,000.

The judge found that the plaintiff "paid for the real estate and that it was not a gift and was not bestowed to it." He found that the $15,000 was an endowment but that in the attending circumstances the receipt of this fund did not make the plaintiff an endowed school, and that, from the manner in which the earnings have been used and controlled, the plaintiff is not an endowed school which offers approved courses without profit within the purview of the statute.

The advance in the mechanical arts and sciences, the great number of technical inventions, and the enormous production and introduction of labor saving machinery in industry and even in the homes, have created a demand for skilled mechanics. The demand was increased by the requirements of the national government in prosecuting the second World War. There was ready employment at high wages for mechanics skilled in making machine tools, in building ships and constructing aircraft, in radar, radio, television, electronics and allied branches, and in the production of modern weapons employing nuclear energy. Many discharged veterans accepted the benefits of 58 U. S. Sts. at Large, 284, the G. I. bill of rights, so called, and attracted by the advantages in these occupations sought technical training. To supply these demands many trade schools

sprang up in various sections of the Commonwealth, some of which were really no more than commercial undertakings for the personal benefit of their owners.   See *Murray* v. *Bateman,* 315 Mass. 113.

The Commonwealth has a vital interest not only in the academic education of its youth, but also in the technical training of its people.   The establishment and operation of private trade schools are regulated and supervised by means of a statutory licensing system.   No license is to be granted unless the commissioner of education shall have approved "the proposed standards adopted and methods of instruction to be followed, the equipment and housing provided, the training and experience of the teachers to be employed, the form and contents of the student enrolment agreement or contract and the method of collecting tuition, nor and unless and until such schools shall have filed in the office of said commissioner its current advertising, if any."   G. L. (Ter. Ed.) c. 93, § 21B, inserted by St. 1941, c. 583, § 2.

The statute, G. L. (Ter. Ed.) c. 93, § 21A, defines a private trade school as "a school maintained, or classes conducted, for the purpose of teaching any trade or industrial occupation for profit or for a tuition charge but shall not include a private business school, school or college regularly chartered and authorized by the laws of the commonwealth to grant degrees, an endowed school which offers approved courses without profit . . . ."   The plaintiff contends that it is an endowed school as just described and consequently is not a private trade school which requires a license for its operation.

The conveyance of the real estate to the plaintiff was not an endowment.   One reason apart from others is that the plaintiff bought and paid for the school premises.   It was a purchaser and not a donee.   The judge was right in finding that it was not an endowment of the school.

We are of opinion that the mere receipt of the Hoffman fund did not change the character of the school to that of an endowed school operating without profit.

The donation of this fund, the principal of which is to be held permanently intact and whose income alone is to be used for the purposes of the school, readily comes within the definition of an endowment if we assume for the moment that the donee was a charitable educational institution. *Massachusetts Agricultural College* v. *Marden,* 156 Mass. 150, 155. *Millsaps College* v. *Jackson,* 136 Miss. 795, affirmed 275 U. S. 129. *Edwards* v. *Hall,* 6 De G. M. & G. 74. *Epperson* v. *Clintonville Cemetery Co.* 303 Ky. 852. *State* v. *Silverthorn,* 23 Vroom, 73. *St. Joseph's Hospital* v. *Bennett,* 281 N. Y. 115. *Appeal of the Wagner Free Institute of Science,* 116 Pa. 555. *Lakeside Country Day School* v. *King County,* 179 Wash. 588. But it is an endowed school having the other statutory requirements that is exempt from the necessity of a license. The word "endowed" must be construed with reference to all the other terms employed in § 21A, without giving undue emphasis to any of them, in order to carry out the intent and purpose of the Legislature. *Bolster* v. *Commissioner of Corporations & Taxation,* 319 Mass. 81, 84. *Commissioner of Corporations & Taxation* v. *Assessors of Boston,* 324 Mass. 32, 36. The endowed school is commonly one having an old and established reputation as an outstanding educational institution, staffed by an excellent faculty familiar with the new developments in the subject which they teach, in a word, an institution dedicated predominantly to the education of the public and one where the income is only a minor concern and where the profits, if any, are used exclusively for the benefit of the school.

The Legislature did not intend that a private trade school should avoid supervision by the department of education by the simple expedient of receiving a small donation, the principal to be held as a permanent fund and the income to be used for the benefit of the school. The statute is not so easily circumvented. The amount of the gift should bear a substantial relation to the present or future financial needs of the school. This does not mean that a small endowment cannot be made to a school already endowed. That is not

the instant case. The claim here is that the receipt of this simple fund alone converted the school into an endowed school. The amount of interest earned by the fund at the prevailing rates for bank deposits is too trivial to affect the financial structure of the school, to change its operation, or to require the public authorities charged with its supervision to recognize it as an endowed school. The amount of income from the fund is almost negligible when compared with the total revenues and profits of the school.

A school which has secured an endowment may be literally an endowed school, as the plaintiff urges, but a literal construction of a statute is not necessarily to be adopted if the result of such adoption will be to hamper and obstruct the accomplishment of the plain intent and purpose of the statute when a construction is reasonably possible which will avoid such a result. *Fickett* v. *Boston Firemen's Relief Fund*, 220 Mass. 319, 320. *Frye* v. *School Committee of Leicester*, 300 Mass. 537, 538. *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 583–584. *Lehan* v. *North Main Street Garage, Inc.* 312 Mass. 547, 550. *Commissioner of Corporations & Taxation* v. *Boston Ins. Co.* 328 Mass. 641, 646.

We need not decide whether the plaintiff is a nonprofit organization or discuss the findings of the judge relative thereto because, as the plaintiff is not an endowed school within the purview of said § 21A, it is not entitled to operate its school without the license required by this section.

*Decree affirmed with costs.*