335 Mass. 486 (1957)
140 N.E.2d 470
CITY OF WORCESTER
vs.
NEW ENGLAND INSTITUTE AND NEW ENGLAND SCHOOL OF ACCOUNTING, INC., & others.
Supreme Judicial Court of Massachusetts, Worcester.
September 24, December 31, 1956.
March 1, 1957.
Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.
Francis H. George, for the defendant Myles Morgan and others.
Philip H. Breen, for the defendant New England Institute and New England School of Accounting, Inc.
No argument nor brief for the plaintiff.
WHITTEMORE, J.
On this bill in equity for a declaratory decree the judge in the Superior Court in "Findings of Fact and Declaratory Judgment" filed May 13, 1955, ruled that the defendant New England Institute and New England School of Accounting, Inc. (New England Institute), is a school within the meaning of § 8, clause (6),[1] of Article III of the zoning ordinance of the city of Worcester (Revised Ordinances, 1951, as amended), and hence that its use of premises at 251 Salisbury Street, Worcester, located in one of the "Residence `A' districts" as defined by § 8 is lawful. The individual defendants are owners of property abutting the subject premises and by their appeal they present the correctness of the final decree entered in accordance with the ruling.
The findings of fact show as to New England Institute as follows: It is a nonprofit corporation, incorporated in 1932 under G.L. (Ter. Ed.) c. 180 which regulates the organization of corporations for educational, charitable, benevolent and religious purposes and certain other purposes. It has been held to be exempt from municipal, State, and Federal taxation. Conforming to its purposes, it uses the subject *488 premises "for the teaching of the principles of the science of accounting in all its branches to post high school graduates which includes business law, business mathematics, business English, taxes and typing as incidental to accounting." It conducts both a day and a night school on the premises. It charges tuition to its students generally, although it grants annually to a few students full or part tuition exemption. A student satisfactorily completing its two year course receives a diploma. The administration is conducted on the premises and books and supplies are sold there. The administration is by three trustees one of whom is also educational director, business manager and instructor in accounting, and another of whom is secretary and instructor in business law. Each of these two receives compensation as instructor. There is no finding that the school has any endowment.[1a]
The case was heard in the Superior Court prior to the enactment of St. 1956, c. 586, amending G.L. (Ter. Ed.) c. 40A, § 2 (inserted by St. 1954, c. 368, § 2), to provide "that no ordinance or by-law which prohibits or limits the use of land for any church or other religious purpose or for any educational purpose whether public, religious, sectarian or denominational shall be valid." This statute was approved August 2, 1956, and became applicable to the Worcester zoning ordinance on October 31, 1956, notwithstanding the prior enactment of the ordinance. Attorney General v. Dover, 327 Mass. 601. The statute is decisive of this case.
It is not necessary to determine if the clause "whether public, religious, sectarian or denominational" limits the preceding generality. See Gaynor's Case, 217 Mass. 86, 89, and cases cited; Thorp v. Lund, 227 Mass. 474, 479-480; Central Trust Co. v. Howard, 275 Mass. 153, 158; State v. *489 Sestric, 349 Mo. 182, 189 ("whether" clause construed not to be a limitation); Commonwealth v. Welosky, 276 Mass. 398, 401-402; Tilton v. Haverhill, 311 Mass. 572, 577-578. It is sufficient to hold, as we do, that the "educational purpose" of New England Institute is "public" within the meaning of that word as used in the statute.
The promotion of education by nonprofit institutions not maintained at public expense has from early times been often asserted, recognized or reaffirmed as a public purpose. 43 Eliz. c. 4. Mass. Col. St. 1671, 4 Mass. Col. Rec. Part II, 488 (all gifts and legacies "to the colledge, schooles of learning, or any other publicke use"). Constitution of Massachusetts, Part II, c. 5, §§ 1, 2. Lowell, appellant, 22 Pick. 215. Dexter v. Harvard College, 176 Mass. 192, 194-195 ("That a gift for the promotion of education in Harvard College is a public charity is a proposition too plain to need discussion" citing American Academy of Arts & Sciences v. Harvard College, 12 Gray, 582, 594). Minns v. Billings, 183 Mass. 126, 131-132. Richardson v. Essex Institute, 208 Mass. 311, 317-318. Opinion of the Justices, 214 Mass. 599, 601. Assessors of Boston v. Garland School of Home Making, 296 Mass. 378, 385, and cases cited. Assessors of Lancaster v. Perkins School, 323 Mass. 418, 422.
We think that the Legislature, in using the words "educational purpose ... [which is] public," was not intending a more limited category than the well recognized one which the words used aptly describe. For reasons next discussed, there is, we think, no basis for concluding that the exemption is confined to publicly supported or maintained institutions or to "public schools."
Prior to the constitutional amendment of 1917 there was no bar to the use of public funds, not "raised by taxation for the purpose of expenditure within the sphere of the public or common schools," for the aid of some categories at least of privately operated educational institutions which could be found to be for the benefit of the public under the established rules. Opinion of the Justices, 214 Mass. 599, 601, and cases cited. Constitution, Part II, c. 5, §§ 1, 2. *490 Art. 18 of the Amendments. (The reference in the opinion is to "higher educational institutions, societies or undertakings under sectarian or ecclesiastical control" but the underlying principle is of broader scope.) The constitutional prohibition of the use of public funds for educational institutions not publicly owned and maintained (art. 46 of the Amendments, § 2) cut off one of the ways in which the activities of privately maintained educational institutions which are operated so as to benefit the public are of public concern, but it did not change the nature of what they were doing. Both before and after the amendment they were benefiting the public in offering education either to the public generally, or to an "indefinite class of persons" from among the general public (Assessors of Boston v. Garland School of Home Making, 296 Mass. 378, 387-389; Franklin Square House v. Boston, 188 Mass. 409, 410; Assessors of Dover v. Dominican Fathers Province of St. Joseph, 334 Mass. 530, 540). As the more recent of the cases show, the privately operated institutions have continued to enjoy the tax exemptions for which they qualify because of their public charitable nature. The amendment of course has not made it any less true that education of the public is in the category of general objectives for which public money can be spent. The limitation is only on the way in which public money can be spent for the general purpose.
"[E]ducational purpose ... [which is] public," as a category inclusive of the purpose of privately operated institutions which benefit the public, continues therefore to be meaningful and significant, notwithstanding the amendment.
The cases and opinions which apply or expound the principle that it is only for a public purpose that money raised by taxation can be spent or that land can be taken by eminent domain (see Opinion of the Justices, 297 Mass. 567, 571-572; Allydonn Realty Corp. v. Holyoke Housing Authority, 304 Mass. 288, 292-293; Opinion of the Justices, 320 Mass. 773, 775), taken with the amendment, confirm that the purpose of privately maintained educational institutions *491 is not public in this important aspect. However, neither they nor the fundamental principle stated, nor the constitutional amendment, force any limitation on the broad concept of public educational purpose, nor do they make the words used in the subject statute inaccurate to define the concept. We think the implication of the entire context of the Constitution, the statute and our decisions is that if the Legislature had intended to limit the exemption to only those educational institutions for which public funds may be spent it would have expressly said so.
It is suggested to us in support of a restricted construction of "educational purpose" that the result otherwise may be to exempt from zoning ordinances and by-laws operations which are inappropriate and offensive in restricted residence or other districts. But to overcome this objections by imparting an intent to make public support the test, would require that we confine the meaning more narrowly than to the concept "educational purpose which is publicly supported" since our statutes provide for publicly maintained schools for "Industrial education," thereby fitting pupils for "trades, crafts, and manufacturing pursuits," as well as for "Agricultural education" which includes the "care of domestic animals." G.L. (Ter. Ed.) c. 74, § 1. It is apparent that this objection of derogation from the basic zoning purpose would be overcome if it were ruled that "educational purpose ... [which is] public" means only the purpose served by "public schools" in the strict sense, well understood in this Commonwealth and often described, of only those schools, through high school grades, which must be maintained by cities and towns for general education. Cushing v. Newburyport, 10 Met. 508, 513. Merrick v. Amherst, 12 Allen, 500, 508-509. Jenkins v. Andover, 103 Mass. 94, 102. Commonwealth v. Connecticut Valley Street Railway, 196 Mass. 309, 310-311. Selectmen of Clinton v. Worcester Consolidated Street Railway, 199 Mass. 279, 290-291. Lynch v. Commissioner of Education, 317 Mass. 73, 77-78. There is, however, no basis in our Constitution, *492 statutes or decisions for suggesting that only this class of the many kinds of educational institutions for which public money can be spent serves an "educational purpose ... [which is] public" and that vocational schools, teachers colleges, the University of Massachusetts, and the other institutions for which public funds may be spent under express statutory provisions but which are not "public schools" do not serve a public educational purpose. This consideration therefore does not suggest legislative intent to make public support the test.
If there is any justification for seeking secondary indication of legislative intent as to the meaning of the words used, significance must be given to the breadth of the accompanying exemption for "any educational purpose ... [which is] religious, sectarian or denominational." Manifestly this language does not exclude post high school institutions serving a religious, sectarian or denominational purpose, but if "educational purpose ... [which is] public" means only "public school" education, the decisions last cited show that all colleges, universities and schools of advanced learning would be excluded from the public educational exemption. We see no indication that such distinction was intended or that the Legislature intended to exclude from the exemption all the long established colleges and other institutions of higher learning whose public aspects have for so long been "too plain to need discussion." On a public aspect of such institutions see St. 1943, c. 549.
It is not of controlling importance in the circumstances that a religious, sectarian, or denominational educational purpose can also be a public educational purpose in that meaning of those words which we find in the statute (Opinion of the Justices, 214 Mass. 599, 601; Assessors of Dover v. Dominican Fathers Province of St. Joseph, 334 Mass. 530, 540) so that the specifications of the statute are not of fully differentiated subcategories as is the case in such a phrase as "public or parochial schools."
We hold that the scope of the concept "educational purpose ... [which is] public" as stated in G.L. (Ter. Ed.) *493 c. 40A, § 2, as amended by St. 1956, c. 586, is to be determined by application of the well established principles which have been applied under other statutes or legal rules to determine whether the purpose of educational or other institutions is public or private as shown in the operation of the institutions and the benefits conferred thereby.
New England Institute serves a public educational purpose within these established principles. That its training is primarily vocational, in the broad sense of fitting pupils "for profitable employment" (G.L. (Ter. Ed.] c. 74, § 1, definition of "Vocational education"), rather than academic does not exclude it from the category. Mount Hermon Boys' School v. Gill, 145 Mass. 139, 146. Assessors of Boston v. Garland School of Home Making, 296 Mass. 378, 384-386. Assessors of Lancaster v. Perkins School, 323 Mass. 418, 422. Accounting has important professional aspects. Lowell Bar Association v. Loeb, 315 Mass. 176, 182-183. See Ipswich Mills v. Dillon, 260 Mass. 453, 455-456. New England Institute is primarily a professional, training school. While it is also "vocational" in the narrower sense of the word, as opposed to "professional," in that it teaches the usual subjects taught in the training of typists and secretaries, its purpose is no less public because such training is offered. Instruction in stenography and typewriting is commonly provided in public high schools. For the public concern with vocational education generally see G.L. (Ter. Ed.) cc. 73, 74, 75, 75A; c. 71, §§ 13D, 17. We do not pause to consider whether there are any kinds of vocational education which do not serve a public purpose.
That a nonprofit institution charges fees for its services does not destroy the public character of its purpose. Boston Symphony Orchestra, Inc. v. Assessors of Boston, 294 Mass. 248, 254, and cases cited. Assessors of Boston v. Garland School of Home Making, 296 Mass. 378, 390-393. Assessors of Lancaster v. Perkins School, 323 Mass. 418, 421-422. The absence of endowment or gifts is not controlling, 296 Mass. 378, 390-391.
In determining the significance for New England Institute *494 of the absence of endowment the effect of G.L. (Ter. Ed.) c. 93, §§ 21-21D (see St. 1941, c. 583), as most recently amended by St. 1955, c. 371, and St. 1956, c. 437, must be appraised. In these sections the Legislature has provided special regulation for a limited class among educational institutions which do not grant degrees and are not endowed, and has described such as "private trade school[s]," § 21A (emphasis supplied). In relevant aspects § 21A, except for the period when it was in the form inserted by St. 1954, c. 257, § 2 (that is, except from June 27, 1954, to August 15, 1955),[1b] has defined "private trade school" as "a school maintained, or classes conducted, for the purpose of teaching any trade or industrial occupation for profit or for a tuition charge but shall not include a private business school, school or college regularly chartered and authorized by the laws of the commonwealth to grant degrees, an endowed school which offers approved courses without profit ... or a school conducted by any person for the education and training of his own employees." This language is perhaps suggestive of the concept that, of institutions which do not grant degrees, only endowed schools conducted without profit are public. See Industrial Technical Schools Inc. v. Commissioner of Education, 330 Mass. 622, 626. But the definition is only for the purpose of stating what schools are to be regulated and the word "private" would appear *495 to be used to distinguish publicly maintained trade schools rather than to characterize the purpose served by the stated category. A "school conducted ... for the education and training of ... own employees" would, primarily at least, have a private purpose and its exclusion from the definition of "private trade school" in § 21A affirms the special purpose of the definition. Furthermore, whether a school serves a public purpose does not, factually, depend on whether it has endowment or grants degrees, while the absence of these attributes can be seen to suggest such possible absence of assured supervision as to warrant special regulation as by c. 93, §§ 21-21D. More accurately, the suggestion in 330 Mass. 622, 626, is that it may be more likely that an endowed school will be one serving a public purpose, and this does not require the conclusion that an unendowed school does not do so. We conclude therefore that the criteria stated in c. 93, §§ 21-21D, are not controlling in determining whether such an institution as New England Institute serves an "educational purpose ... [which is] public" within the meaning of c. 40A, § 2. It follows that it is not necessary to determine on this record whether New England Institute has been ruled or should be deemed to be subject to c. 93, §§ 21-21D, in their present form.
We are not concerned with and intend no intimation as to the status of an institution which, even though no profits are distributed, could be found to be operated in private interest because of the size of salaries or concentration of compensation in a family or group. See Fisher School v. Assessors of Boston, 325 Mass. 529, 532-534; Industrial Technical Schools Inc. v. Commissioner of Education, 330 Mass. 622, 625 ("commercial undertakings for the personal benefit of their owners").
Undoubtedly such an educational institution as New England Institute presents aspects which would tend to support a different zoning classification from that given other kinds of school. See Worcester zoning ordinance which allows "Schools" in all districts, but since the amendment *496 of December 23, 1952 [§ 12 (b) 17], has in terms permitted a "Business College, Vocational or Secretarial School" only in Business B and less restricted districts. But this case does not now turn on that and related points.
The presence of New England Institute in a Residence A district in Worcester will not mean a use there so manifestly incongruous as to raise, in the application of the statute in the instant case, the question of possible derogation by § 2 of c. 40A in its present form from the general purposes intended to be served by the other provisions of c. 40A of which it is a part, and we do not reach that issue.
The final decree is to be modified to declare that the use of the premises at 251 Salisbury Street, Worcester, by the defendant New England Institute and New England School of Accounting, Inc., for the purposes of its charter, and as found by the court in its "Findings of Fact and Declaratory Judgment" is, by virtue of G.L. (Ter. Ed.) c. 40A, § 2, inserted by St. 1954, c. 368, § 2, and as amended by St. 1956, c. 586, not subject to any prohibition or limitation imposed by the terms of the Worcester zoning ordinance, and by striking out the last sentence, and as so modified is affirmed.
So ordered.
NOTES
[1] Section 8 reads in part: "In any residence `A' district no building, structure or lot shall be used or arranged or designed to be used in any part except for one or more of the following specified purposes: ... (6) Schools, municipal structures, parks and municipal playgrounds...."
[1a] The catalogue, not referred to in the findings but included in the exhibits certified by the trial judge, with the assent of the parties, "for presentation to the Supreme Judicial Court," shows eleven "Members of the Faculty" including "Educational Director" and "Bursar," and an "Advisory Council" of twelve business or professional men. The catalogue asserts a high record for its graduates at "Certified Public Accountants' examinations."
[1b] It was agreed at the hearing in the Superior Court that New England Institute "has a license to operate issued by the State department of education under c. 257 of the Acts of 1954." The brief of New England Institute presented to us in September, 1956, asserts that it is "subject to G.L.c. 93, §§ 21 to 21D, and 22, inclusive, which regulate private and proprietary schools." The word "proprietary" in this statement is correctly descriptive of the statute only with reference to the form of the statute fixed by the 1954 amendment which struck from § 21A the definition of "private trade school" and substituted a much broader definition of "private or proprietary school." That definition (effective, as stated, only in parts of 1954 and 1955) expressly included "a school maintained ... for the purpose of giving training in the fields of trade and industry, sales and distribution, communications, art, music, business, or courses in preparation for civil service or license or competency examinations in industrial or trade or technical subjects ..." (emphasis supplied), with exceptions stated including the exception of regularly chartered and degree granting schools and colleges and "an endowed school which offers approved courses without profit." Manifestly the criteria applicable to New England Institute were materially different under St. 1954, c. 257, § 2.