**FINE MORTUARY COLLEGE, LLC, Plaintiff,**

v.

**AMERICAN BOARD OF FUNERAL SERVICE EDUCATION, INC., Defendant.**

**Civil Action No. 06–10191–NMG.**

United States District Court, D. Massachusetts.

Dec. 18, 2006.

Evans Huber, Frieze Cramer Cygelman Rosen & Huber, Wellesley, MA, for Plaintiff.

E. Macey Russell, Peter B. Moores, Choate, Hall & Stewart, Boston, MA, for Defendant.

### MEMORANDUM & ORDER

GORTON, District Judge.

A private college brings suit against an accrediting board for improprieties relating to the process of the college's re-accreditation. The accrediting board moves for summary judgment.

### I. *Background*

FINE Mortuary College, LLC ("FINE"), a private two-year college that prepares students for careers in the funeral service business, filed suit against the American Board of Funeral Service Education, Inc. ("ABFSE" or "the Board") on February 1, 2006. ABFSE is the only accrediting association recognized by the United States Department of Education to accredit colleges and universities in funeral service or mortuary science education. As is the case with other colleges and universities, a school may not offer federal financial aid to its students unless it is accredit-

ed by an authorized accrediting agency such as ABSFE.

Generally, the complaint alleges improprieties by the ABFSE during a review of FINE's application for re-accreditation it conducted between 2004 and 2006. The Board allegedly required FINE to make costly and unnecessary changes in order to meet the standard for re-accreditation. FINE has sued under the federal Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1071 et *seq.* (as amended), for violation of constitutional and common law due process, tortious interference with prospective economic advantage, defamation and violation of Chapter 93A.

### A. Factual background

The following facts are undisputed. The plaintiff was granted initial accreditation in 1997 for seven years. Because its accreditation was set to expire in 2004, FINE commenced the re-accreditation process in October, 2003. Pursuant to the rules set forth by ABSFE, FINE completed a self-study and submitted it to ABSFE in August, 2004 and scheduled a site visit to be conducted by an ABSFE site visit team ("the Evaluation Team") in September, 2004. The Evaluation Team consisted of three Board members chaired by Dr. Catherine Gannon.

At the conclusion of the site visit, the Evaluation Team prepared and presented a report to FINE which concluded with a list of 14 "concerns", i.e. alleged violations of ABSFE's Standards of Accreditation which are set forth in the published Manual On Accreditation. Those concerns ranged from the relatively trivial, e.g. the inexact use of language in FINE's course catalog, to the serious, e.g. an allegation that FINE was not providing proper oversight of its clinical program.

After receiving the Evaluation Team report, FINE attempted to respond to the 14 concerns, submitted a written response to ABSFE and appeared before the Committee on Accreditation ("COA") in Nashville, Tennessee on October 17, 2004. The COA is a standing committee of ABSFE consisting of 11 members that functions to consider applications for initial accreditation or re-accreditation of institutions of funeral service education. After hearing FINE's responses, the COA placed FINE on "warning" status on the basis of the 14 concerns identified by the Evaluation Team. A second site visit was conducted by a two-person focus team ("the Focus Team") in February, 2005, and FINE again appeared before the COA in April, 2005. After the April appearance FINE was re-accredited by the COA for three years, a period considerably shorter than the usual seven-year term, and was required to submit another response to lingering concerns. FINE filed this lawsuit in February, 2006, and subsequently received a full seven-year re-accreditation in April, 2006. The defendant filed a motion for summary judgment on all counts on August 14, 2006.

### II. *Analysis*

### A. Legal Standard

■ The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

## B. Legal Analysis

The defendant moves for summary judgment on the grounds that: 1) the plaintiff lacks standing to bring this suit because the HEA does not permit a private cause of action, 2) the constitutional due process claim fails because the defendant is not a state actor, 3) the common law due process claim fails as a matter of law, 4) plaintiff's state law claims are preempted by federal law and 5) Chapter 93A (the Consumer Protection Act) does not apply because the defendant is a non-profit agency and does not conduct trade or commerce. In the alternative, the defendant contends that liability for the tort claims is statutorily limited to $20,000.

### 1. Counts I and II: Standing and Standard of Review

Counts I and II of the complaint allege that the defendant violated the due process rights of the defendant. The defendant contends that the plaintiff lacks standing to bring either count because the HEA does not provide for a private right of action in cases challenging accreditation decisions. The HEA provides for exclusive jurisdiction in federal district court for any case "involving the denial, withdrawal, or termination of accreditation" brought by a school against an accreditation board. 20 U.S.C. § 1099b(f). Even though FINE ultimately obtained full re-accreditation, it contends that it was at least temporarily denied re-accreditation when it was placed on "warning" status for six months and later granted re-accreditation for only three years.

▮ While the defendant is technically correct that the HEA provides no private right of action, the exclusive grant of federal jurisdiction by the HEA allows claims to be brought under the federal common law of denial of due process. *See Thomas M. Cooley Law School v. American Bar Ass'n,* 459 F.3d 705 (6th Cir.2006); *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges,* 44 F.3d 447, 449 (7th Cir.1994). *See also Massachusetts School of Law at Andover v. American Bar Association,* 142 F.3d 26, 33 (1st Cir.1998)(recognizing federal jurisdiction exists over accreditation challenges in context of removal from state court).

▮ When proceeding under the exclusive grant of federal jurisdiction provided by the HEA, 20 U.S.C. § 1099b(f), courts analyze a claim for violation of common law due process in a manner similar to the inquiry under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (D). *See Chicago School of*

*Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges,* 44 F.3d 447, 449 (7th Cir.1994). Although federal agencies do not accredit schools, they do oversee accrediting agencies which apply standards of their own devising to the schools they monitor. Those standards, in turn, are subject to approval by executive authority. *Id.* at 448. The principles of administrative law, therefore, provide the right perspective for review of accrediting agencies' decisions. *Id.* at 450; *see Cooley,* 459 F.3d 705, 712–13.

■ Although the First Circuit Court of Appeals has not explicitly ruled on the standard to be applied to cases arising under § 1099b, both parties agree to application of the principles of the APA to the facts of this case. Under the APA standard, therefore, the question is whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or reached "without observance of procedure required by law." *Chicago School,* 44 F.3d at 449. This Court's review of an accrediting board's decision, however, is deferential and more limited than agency review under the APA because, even though it performs a quasi-governmental function, an accrediting board is a private organization. *Cooley,* 459 F.3d at 713. Great deference should be afforded to the substantive rules of the accrediting body and the Court will focus on the procedural fairness afforded to the plaintiff during the re-accreditation period. *Id.*

■ Count I of the complaint alleges "arbitrary and unreasonable denial of accreditation" without stating a particular statutory or common law cause of action. Count I may proceed as a claim for violation of due process under federal common law if the plaintiff can show that the Board's decision was "arbitrary, capri-

cious, an abuse of discretion, or otherwise not in accordance with law." *Chicago School,* 44 F.3d at 449–50.

Count II explicitly alleges a violation of federal common law due process rights and also alleges violation of constitutional due process rights. The defendant moves for summary judgment with respect to the constitutional claim because the defendant is not a "state actor", as required for claims arising under the Fourteenth Amendment. At a hearing before this Court on November 29, 2006, plaintiff's counsel conceded that the defendant is not a state actor and that the constitutional due process claim is defective. The constitutional due process claim will, therefore, be dismissed. The common law due process action does not, however, require state action and will not be dismissed on that basis. *See Chicago School,* 44 F.3d at 449–50.

### a. Count I: Arbitrary and Unreasonable Denial of Full Re-accreditation

■ Count I alleges arbitrary and unreasonable denial of re-accreditation. The plaintiff contends that the ABSFE, in essence, denied re-accreditation to the plaintiff because the ABSFE a) initially placed FINE on "warning" status for a period of six months, b) required FINE to undergo a second site visit and make a second appearance before the COA and c) re-accredited FINE for only three years, as opposed to a full seven-year term.

The thrust of FINE's allegation in Count I is that the 14 "concerns" identified by the Board were either frivolous or were similar to concerns noted with respect to other comparable schools that received full re-accreditation. The record indicates there was, however, a factual basis for most, if not all, of the concerns identified by the ABSFE. FINE does not dispute

that most of the concerns pertained to existing discrepancies or that it was given notice and an opportunity to correct the problems. However "frivolous" some of the concerns may have been, this Court will not disturb the findings of the Board as long as they were grounded on some factual basis.

The facts of this case are similar to those in *Marlboro Corp. v. Association of Independent Colleges and Schools, Inc.*, in which the First Circuit Court of Appeals upheld the district court's denial of a preliminary injunction in a similar action filed by a school against an accrediting board. 556 F.2d 78 (1st Cir.1977). While the First Circuit did not explicitly analyze the facts under the APA standard, it applied similar principles in concluding that due process required no more than an opportunity for the school to present its position by written submission to the accrediting board and to argue its position orally. *See Marlboro Corp.*, 556 F.2d at 80–83.

This Court will not second-guess the substantive findings of an agency whose responsibility it is to evaluate and accredit mortuary colleges. In short, the ABSFE identified actual causes of concern, provided notice thereof to the plaintiff and ultimately awarded re-accreditation. Without more, such conduct does not constitute a deprivation of due process and Count I will be dismissed.

### b. Count II: Deprivation of Due Process in the Accreditation Decision

Count II also alleges violation of common law due process but focuses on different alleged improprieties of the Board. Rather than dwell on the outcome of the procedure and the substance of the ABS-FE findings, the plaintiff contends in Count II that its due process rights were violated because a) the accreditation process was tainted by bias and b) the ABS-FE failed to adhere to its own published procedures.

 Decision by an impartial tribunal is a fundamental element of due process under any standard. *Marlboro Corp.*, 556 F.2d at 82. The plaintiff contends that the process of re-accreditation was biased because the President of the Board was affiliated with the plaintiff's only competitor in Massachusetts and because one of the three members of the Evaluation Team demonstrated bias against the plaintiff before the re-accreditation process even began. The most significant example of the alleged bias is that the said president, Jacquelyn Taylor, was also the director of the funeral service program at Mount Ida College, the only other college in the Commonwealth of Massachusetts to offer a program in funeral services.[1]

The plaintiff also alleges that Dr. Catherine Gannon, chair of the Evaluation Team, exchanged a series of e-mails with the Executive Director of ABSFE about FINE which could be construed as evidence of bias against FINE before the re-accreditation process began. If proven, such bias would be troubling. Clearly, a factual dispute exists as to whether FINE was afforded an impartial re-accreditation evaluation which precludes summary judgment on the issue.

 The second factual dispute raised by the plaintiff with respect to Count II is whether the defendant followed its own policies and procedures throughout the re-accreditation process. Notably, the plaintiff alleges that Taylor, then-president of

---

1. At a hearing before the Court on November 29, 2006, plaintiff's counsel represented that the defendant had more recently produced documentation of defamatory statements and bias towards FINE on the part of Taylor.

the ABSFE, wrote a letter to its Executive Director regarding complaints she had received about FINE from former FINE students without notifying the college of such allegations or allowing it to pursue its own grievance procedure. The plaintiff also alleges that Ms. Taylor met with those students privately without providing notice to FINE, in clear contravention of the Board's own published procedures. Those allegations are sufficient to demonstrate a genuine issue of material fact as to whether ABSFE followed its own procedures during the re-accreditation process. Count II will not, therefore, be dismissed on summary judgment.

### 2. Counts III, IV and V: State Law Claims

The plaintiff has brought three state law claims for interference with prospective economic advantage, defamation and unfair and deceptive business practices in violation of Chapter 93A (Counts III, IV and V). The defendant contends that all three state law claims are preempted, or, in the alternative, that the Chapter 93A claim fails because the parties were not involved in a commercial transaction and that the Massachusetts charitable immunity cap limits damages in Counts III and IV to $20,000.

### a. Preemption

 The defendant contends that all three state law claims in the complaint should be dismissed because they are preempted by the exclusive grant of jurisdiction for accreditation challenges under the HEA. 20 U.S.C. § 1099b(f). The issue of preemption is problematic in this context and has led to disagreement between various circuit and district courts. While the First Circuit has not specifically addressed the issue, this Court has carefully considered the reasoning in *Massachusetts School of Law at Andover, Inc. v. Ameri-*

*can Bar Association,* 1997 WL 263732 (D.Mass.1997)(Lasker, J.). That unpublished decision was one of several related cases that were ultimately affirmed by the First Circuit in a case by the same name. *See* 142 F.3d 26 (1st Cir.1998). Judge Lasker relied on a Ninth Circuit opinion, *Keams v. Tempe Technical Institute, Inc.,* 39 F.3d 222 (9th Cir.1994), in finding that because the HEA provided for express preemption in several areas, including state disclosure laws, usury laws, statutes of limitation, and state infancy defenses, Congress did not clearly intend the HEA to preempt state law altogether. *Massachusetts School of Law,* 1997 WL 263732 at *5. The Court concluded that the exclusive grant of federal jurisdiction for accreditation claims in the HEA, 20 U.S.C. § 1099b(f), was intended to ensure access to federal courts for schools to sue accreditation boards but did not preempt plaintiff's state law claims for violation of Chapter 93A, fraud and deceit, tortious misrepresentation and breach of contract. *Id.* at *9. While Judge Lasker's opinion is not, of course, binding precedent, this Court finds his analysis persuasive. The plaintiff's state law claims are not preempted by the HEA and will not be dismissed on that ground.

### b. Charitable Immunity Cap Limits Liability for Tort Claims

 The defendant moves for summary judgment with respect to Counts III and IV on the basis of preemption but does not move to dismiss those counts for failure to state a claim on which relief can be based. Instead, the defendant requests that the Court limit liability under the tort claims in Counts III and IV because relief is capped by the Massachusetts Charitable Immunity statute, M.G.L. c. 231, § 85K, at $20,000. That statute provides that the

liability of any "charitable organization" is limited to $20,000

> if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.

M.G.L. c. 231, § 85K. That limitation does not apply, however, to torts committed in the course of activities which are "primarily commercial in nature". *Id.* In order to limit liability, therefore, the Court must find that 1) the ABSFE is a "charitable organization" (as that term is defined in the statute), 2) the tortious interference and defamation claims directly concern the accomplishment of ABSFE's charitable purpose and 3) that the actions of ABSFE were not commercial in nature.

The second and third criteria are not seriously challenged by the plaintiff. The alleged tortious interference and defamation satisfy the second requirement because they occurred during and with respect to FINE's re-accreditation process. The alleged actions of the Board were not commercial in nature because any dues or fees paid in connection with the re-accreditation process are not taken for profit or gain. The only question is whether the ABSFE qualifies as a "charitable organization" within the meaning of the statute.

The Supreme Judicial Court of Massachusetts has defined "charitable institution" as follows:

> An institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work.

*Conners v. Northeast Hospital Corp.*, 439 Mass. 469, 789 N.E.2d 129 (2003). The

ABSFE is a charity to the extent that it does not operate for profit and, as the single nationwide accrediting board for schools specializing in funeral services, it provides an important benefit to educational institutions and students across the country. The public derives more than an "incidental benefit" from such work because without the accrediting board there would be no federal loans for funeral service education, and, therefore, fewer funeral service professionals to accommodate a clear and abiding need of the public. The promotion of education by nonprofit institutions has long been recognized as a public purpose, *see City of Worcester v. New England Inst. & New England Sch. of Accounting*, 335 Mass. 486, 489, 140 N.E.2d 470 (1957), and the plaintiff cites no Massachusetts caselaw to the contrary. The Court finds, therefore, that the ABSFE qualifies for charitable immunity and liability on the state tort claims will be limited to $20,000 pursuant to M.G.L. c. 231, § 85K.

### c. Chapter 93A Only Applies to "Trade or Commerce"

■ Finally, the defendant seeks dismissal of the Chapter 93A claim in Count V because it allegedly does not apply to ABSFE in this context. Chapter 93A applies only to conduct that involves "trade or commerce." M.G.L. c. 93A §§ 2(a), 11. The Court finds that ABSFE does not engage in "trade or commerce" because it was a non-profit organization with the purpose of furthering education. The Supreme Judicial Court has held that the Massachusetts Medical Professional Insurance Association ("MMPIA") did not conduct "trade or commerce" because it is a legislatively-controlled non-profit organization acting in accordance with a statutory mandate that did not operate in the general marketplace. *Poznik v. Mass. Med. Prof'l Insur. Assoc.*, 417 Mass. 48, 53, 628

**162**

N.E.2d 1 (Mass.1994). Similarly, the ABSFE is a nonprofit organization that operates as an intermediary between the federal government and schools that receive financial assistance.

The plaintiff contends that the role of Jacquelyn Taylor as president of ABSFE and director of FINE's only competitor in Massachusetts during the re-accreditation process renders the defendant's actions a commercial transaction. That allegation, while sufficient to state a claim that the re-accreditation process may have been tainted by bias, is not enough to convince this Court that ABSFE was engaged in trade or commerce with respect to FINE. Count V will be dismissed.

### ORDER

For the foregoing reasons, the defendant's motion for summary judgment (Docket No. 14) is, with respect to Counts I and V, and to imposing the statutory limitation on damages in Counts III and IV, **ALLOWED,** but is, in all other respects, **DENIED.** Counts I and V of the plaintiff's complaint are **DISMISSED** and liability under Counts III and IV is limited to $20,000.

So ordered.