**MARLBORO CORPORATION, doing business as the Emery School, Plaintiff, Appellant,**

v.

**The ASSOCIATION OF INDEPENDENT COLLEGES AND SCHOOLS, INC., Defendant, Appellee.**

No. 76–1376.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1976.

Decided May 26, 1977.

David M. Lipton, Boston, Mass., with whom John C. Ottenberg and Barron & Stadfeld, Boston, Mass., were on brief, for plaintiff, appellant.

C. William Tayler, Washington, D.C., with whom Sachs, Greenebaum & Tayler, Washington, D.C., Richard F. McCarthy, Willcox, Pirozzolo & McCarthy, Boston, Mass., Richard A. Fulton, and Thomas A. Fulton, and Thomas Hylden, Washington, D.C., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge and GIGNOUX,* District Judge.

COFFIN, Chief Judge.

This is an appeal from the denial of a preliminary injunction. Appellant Marlboro Corporation operates the Emery School, a private proprietary institution that offers a two-year non-degree program of training for court and conference stenotype reporters. The Accrediting Commission of appellee, the Association of Independent Colleges and Schools (AICS), is the only agency recognized by the United States Commissioner of Education to accredit business schools like Emery. Without accreditation from A.I.C.S., Emery is ineligible to participate in various federal student aid programs.

In December of 1975, the Commission voted to deny Emery's application for a new grant of accreditation, and shortly thereafter Emery was declared ineligible to participate in federal aid programs. Emery brought suit in state court, and AICS removed the case to federal district court. As amended in the district court, Emery's complaint alleges that the denial of accreditation deprived it of "rights protected by the due process and equal protection clauses of the Constitution of the United States, the rules and regulations of the United States Commissioner of Education, and the internal procedures of the defendant." Emery sought preliminary and permanent injunctions directing AICS to extend a grant of accreditation and to inform the federal Office of Education that accreditation had been granted, and other appropriate relief.

The district court denied a preliminary injunction on the ground that Emery had failed to show a probability of prevailing on the merits. It held that AICS was not so closely associated with the government that its actions were government actions under *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), and that it had fulfilled its common law duty as a "quasi-public" private association to follow fair procedures reasonably related to its legitimate purposes. *See Rockland Institute v. Association of Independent Colleges and Schools*, 412 F.Supp. 1015 (C.D.Cal.1976); *Falcone v. Middlesex County Medical Society*, 34 N.J. 582, 170 A.2d 791 (N.J.1961). *See also Marjorie Webster Junior College, Inc. v. Middle States Association of Colleges and Secondary Schools, Inc.*, 139 U.S.App.D.C. 217, 432 F.2d 650, 655–58 (1970). Finally, it concluded that appellee's procedures were not in violation of federal regulations.[1]

Whether the Commission's procedures are, as the district court held, immune

* Of the District of Maine, sitting by designation.

1. The district court noted in its order denying the preliminary injunction that it had "considered every aspect of the case, which may now be ripe for filing of cross motions for summary judgment." However, since the hearing on preliminary injunction was not consolidated with trial on the merits, *see* Fed.R. Civ.P. 65(a)(2), both parties will have the opportunity to present additional evidence and legal argument before the district court, which will them make its own findings of fact and conclusions of law. Our conclusions based on the present record and solely directed to the propriety of preliminary relief are of course not conclusive on any issue.

from constitutional scrutiny is a close question. While it is true that there is no governmental participation in AICS, *compare Burton v. Wilmington Parking Authority, supra; Parish v. National Collegiate Athletic Association,* 506 F.2d 1028, 1032 (5th Cir. 1975), the Commission has actively sought and received the federal recognition that makes its grant of accreditation a prerequisite to federal program eligibility. It appears that if AICS or an agency like it did not perform the accreditation function, "government would soon step in to fill the void." *Id.* at 1033. However, we find it unnecessary to decide whether this nexus renders the denial of accreditation government action since, even assuming that constitutional due process applies, the present record does not persuade us that any of Emery's procedural rights have been violated.[2] We shall first summarize the proceedings and then discuss Emery's specific objections.

In August, 1974, the Commission ruled that Emery must undergo a complete reapplication and inspection for accreditation which would be considered at the April, 1975, meeting. Pursuant to the Commission's procedures for accreditation and reaccreditation[3] Emery submitted self-evaluation materials and was visited by an on-site inspection team which filed a substantially negative report. Emery then filed a written response to the visitation team's report, which took issue with most of the team's findings.

In April, 1975, the Commission extended Emery's accreditation through December 31, 1975, but deferred consideration of the application for a new grant of accreditation pending receipt of evidence of compliance with AICS criteria in twelve identified areas of weakness. Among the information requested were "an audited financial statement evidencing financial stability and certified by an independent certified public accountant", "[e]vidence of adequate library holdings to serve the educational program", and a "catalogue meeting all AICS criteria." The Commission's resolution directed Emery to file the requested information prior to June 30, 1975 so that the application could be considered at the August, 1975, meeting, and indicated that failure to file the items listed would be "sufficient grounds to deny the application for a new grant of accreditation."

In June Emery submitted a lengthy progress report which, adopting an approach very different from its initial response to the visitation team's report, expressed appreciation for the "candor and general objectivity" of the team's report, conceded that there were "deficiencies and shortcomings in The Emery School's curricular programs, administrative and supervisory practices, and physical facilities", and indicated its plans to remedy these deficiencies. At the August meeting, however, the Commission voted to deny Emery's application on the ground that the deficiencies noted in the April resolution had not been corrected.[4] It referred by paragraph num-

2. Emery also raises a substantive claim which does not merit extended discussion. The claim that it was denied equal protection because the Commission granted accreditation to schools in equally poor financial condition, or with equally poor library facilities, really amounts to a claim that the Commission was incorrect in its evaluation of either Emery or the other schools. Whatever may be the proper scope of judicial monitoring of associations like AICS, it does not include de novo review of their evaluative decisions.

3. The August, 1974, ruling ended some two years of debate over Emery's accreditation, which had been withdrawn while the school was under previous ownership. The withdrawal was set aside and a new grant of accreditation for a period not beyond April 30, 1975 was

extended. This put Emery in essentially the same position as any institution whose accreditation expires, since under the Commission's procedures any "grant of accreditation is for a specific period of time" and the "process of reapplication is the same as the steps described for initial application". Operating Criteria for Accredited Institutions 2–4–101, 2–4–104.

4. The resolution specifically referred to Section 2–2–100 of the Operating Criteria for Accredited Institutions "which states that when deficiencies have been called to the attention of the institution, it is the institution's responsibility to present evidence to the Commission of the correction". That section further states that "[a] letter of intent will not be accepted as such evidence."

ber to the items listed in the previous resolution, but again mentioned specifically the lack of a certified audited financial statement and an adequate catalogue, and gave an an additional reason for denial Emery's delinquent account with the Commission in the amount of $529.61. The resolution informed Emery of its right to appeal the denial at a hearing before the next meeting of the Commissioners.

Emery thereupon notified the Commission that it wished to appeal, and was advised to submit "information concerning the alleged deficiencies and any other materials which might assist the Commission in its determinations".[5] In correspondence with the Commission staff Emery indicated that it was unable to file an audited and certified financial statement for the period required, but proposed to file instead an audited but uncertified statement covering the preceding eight months and a projected income statement for the following year. The staff responded that only the Commission could determine whether Emery's submission was acceptable. Emery also filed a report purporting to indicate that "we have corrected the deficiencies noted by the Commission", which described actions taken in response to each criticism; and tendered payment of the amount referred to in the August resolution.

On December 2, 1975 Edward Charles, President of the Emery School, accompanied by the school's attorney, appeared before the Commission. The institution was given thirty minutes to present its case and respond to questions from the Commissioners. Mr. Charles summarized the school's efforts to correct specific programmatic deficiencies and submitted as exhibits an on-site inspection report prepared by the private education consultant Emery had hired to assist its effort, and a proposal from another consulting firm the school intended to hire to upgrade its library holdings.

The Commissioner's questions focused on Emery's financial statements. Mr. Charles was unable to respond to questions about the method of accounting for undistributed federal grant and matching funds; whether "unallocated but drawn down" federal student aid money was used to cover the school's operating expenses; and the status of an outstanding loan to Mr. Charles himself, in a substantial amount, which was listed as an asset of the school.[6] As the session was ending, the Chairman advised Mr. Charles that according to the Commission's records Emery still owed it $200.12, which bill was two years overdue and had been referred to an attorney for collection. Mr. Charles responded that he believed Emery had settled its account, but that he was prepared to pay immediately any amount still due.

On December 16 Emery was notified that the denial of accreditation was reaffirmed and that the institution's current grant of accreditation through December 31, 1975 would "expire with the passage of time". The resolution gave as grounds for denial the school's failure to submit an audited, certified financial statement evidencing financial stability; failure to demonstrate adequate library holdings to serve the educational program; and failure to pay a past due amount of $200.12.

■ We have recounted the proceedings at some length because we think that the extended process of consultation, communication, and reconsideration that the record reflects is significant in evaluating Emery's objections to specific alleged procedural flaws. Whether the process is measured against constitutional or common law standards, current doctrine teaches that procedural fairness is a flexible concept, in which the nature of the controversy and the competing interests of the parties are con-

---

5. Section 2–5–102 of the Operating Criteria provides that at the hearing before the Commission appealing a denial of accreditation "the institution may present only evidence not already considered."

6. In a closing statement the school's attorney observed that neither he nor Mr. Charles was a financial expert and suggested that the Commission obtain any supplemental information it wanted about the financial statements from the accountant.

sidered on a case-by-case basis. *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

We have no doubt that due process did not, as Emery contends, require a full-blown adversary hearing in this context. The inquiry was broadly evaluative in nature, not, as might be the case in a withdrawal of accreditation for cause, *see* Operating Criteria §§ 2–5–104, 2–5–105, accusatory. Emery was given ample opportunity to present its position by written submission and to argue it orally; if it did not make the best use of those opportunities (as by failing to bring its accountant to the hearing), the blame cannot be placed on the Commission. And, even if Emery was able to point to issues in this particular case on which confrontation and examination of witnesses might have been helpful, which it has not, any possible benefit to the institution is far outweighed by the burden that formalized proceedings would impose on the Commission. *See Mathews v. Eldridge, supra; Downing v. LeBritton*, 550 F.2d 689 at 692–693 (1st Cir. 1977). The Commission's procedures treat applicants for accreditation like capable professionals seeking the evaluation and recognition of their peers: we do not think that due process requires any more.

Emery next alleges that the President of a school in direct competition with Emery, which would "fall heir to" Emery's business if accreditation were denied, *see Gibson v. Berryhill*, 411 U.S. 564, 571, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), improperly participated in the proceedings. The Commission asserts that this individual, though a member, and in fact Chairman of the Accrediting Commission, took no part in the discussion or vote on Emery's application. Emery disputes whether he in fact abstained from the closed discussion and voting but all that clearly appears from the record before us is that he was present at, but did not chair or participate in Emery's December hearing.

■ Decision by an impartial tribunal is an element of due process under any standard, *see generally* K. Davis, *Administrative Law Treatise* § 12.03, but here too

the particular facts and "local realities" of any given case must determine whether there is an actual or apparent impropriety that amounts to a denial of due process. *See Gibson v. Berryhill, supra*, 411 U.S. at 579, 93 S.Ct. 1689. Emery points only to the presence of one individual at the final step in a prolonged process of evaluation and review as evidence of bias. It makes no showing that the decision was in fact tainted by bias. Indeed, the number of people who participated in the decision at various stages renders the risk of actual prejudice quite remote. Thus, Emery's real objection is to an appearance of impropriety resulting from the presence of a competitor at the final decision on Emery's accreditation. *See American Cyanimid Co. v. FTC*, 363 F.2d 757 (6th Cir. 1966). Emery asserts that the Chairman's competitive position "in no way became a part of the record of the proceedings in this case", but it seems apparent that the identity and presence of this close competitor were not hidden or unknown to Emery, *compare Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). We think that Emery's sensibilities would be entitled to little consideration if it did not explain why it was unable to raise its objection to the apparent impropriety at the meeting. Nor do we think that the Commission's general practice of allowing interested commissioners to remain present without participating while their competitors are considered is necessarily objectionable: since many institutions are discussed at each semi-annual meeting of the Commission, and hearings are apparently quite tightly scheduled, the Commission asserts that it would be impractical to have interested Commissioners actually withdraw during discussions on competitors. *Cf. Davis, supra*, § 12.04 ("rule of necessity"). The question is troublesome, but on the present record we do not think that Emery has shown sufficient actual or apparent impropriety to render denial of preliminary relief an abuse of discretion.

■ Emery's remaining claims are less substantial. The charge that the Commis-

sion decision was "arbitrary and capricious" because based on insubstantial grounds is utterly frivolous. While it appears that Emery acted in good faith with respect to payment of its debts to the Commission, we doubt that the outstanding debt was determinative, and we agree with the district court that the irregularities in Emery's financial statement alone would have justified the Commission's decision. Finally, we also agree that the federal Office of Education's criteria for accrediting agencies, 45 C.F.R. § 149.6(b)(3), even assuming they are privately enforceable, do not require an appeal before a separate appeal body.

*Affirmed.*