**TRANSPORT CAREERS, INC., Plaintiff,**

v.

**NATIONAL HOME STUDY COUNCIL and Accrediting Commission, National Home Study Council, Defendants.**

**Civ. No. F 86–322.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 3, 1986.

Martin T. Fletcher, Thomas M. Gallmeyer, James J. Shea, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for plaintiff.

James P. Fenton, Barrett & McNagny, Fort Wayne, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment.[1] This

---

1. A hearing was held on this motion on October 16, 1986, at which time the plaintiff's counsel agreed to file a stipulation withdrawing any counts in the complaint which did not present viable theories of recovery. Pursuant to plaintiff's stipulation, Counts II, VI, VII, VIII and X were withdrawn by order of this court on October 21, 1986. At the October 16, 1986 hearing, the court specifically informed plaintiff's counsel that it wanted to decide the case on a full record and the court invited plaintiff's counsel to file any necessary additional arguments.

is a suit for injunctive relief, declaratory relief, and damages. In its eleven count complaint, plaintiff alleges that defendants violated its constitutional rights to due process and equal protection, that defendants violated the Code of Federal Regulations, that defendants violated the common law, and that defendants breached their fiduciary duty to the plaintiff. The court will treat defendants' motion as a motion for summary judgment. For the following reasons, defendants' motion will be granted.

## FACTUAL BACKGROUND

While a more detailed account of the facts will be given as each of plaintiff's counts are analyzed, what follows is a general statement of the facts. Transport Careers, Inc. (hereinafter TCI) is an Indiana corporation with its principal place of business in Garrett, Indiana. TCI trains students in the operation of semi-truck driving and diesel mechanics. TCI's courses involve home correspondence study and resident training at a designated TCI resident training site. TCI has two resident training sites: one located in Garrett, Indiana; and one located in El Cajon, California. The National Home Study Council (hereinafter NHSC) is a not-for-profit association of public and private home study schools, based in Washington, D.C. The Accrediting Commission of the NHSC is a nationally recognized accrediting body designated by the Secretary of Education to accredit home study courses, pursuant to 20 U.S.C. § 1085(b), and 34 C.F.R. § 603.1, *et seq.*

TCI was accredited by the Accrediting Commission, and was a member of NHSC, from 1976 to July 30, 1986. Effective July 30, 1986, the Accrediting Commission affirmed its June 6, 1986 decision to terminate TCI's accreditation. The events leading to TCI's loss of accreditation began on January 14, 1986, when the Accrediting Commission sent a letter to TCI informing it that a full reexamination of TCI would be undertaken because of numerous violations of NHSC's business standards. Site visitations were conducted at TCI's facilities in Garrett, Indiana and El Cajon, California in March and April of 1986. After the examinations, TCI was given a copy of the examining committee's report.

Following receipt of the report, TCI submitted a written response to the Accrediting Commission in which it addressed the various items in the report and included documentary evidence of compliance or remediation. On June 6, 1986, the Accrediting Commission met to consider TCI's accreditation. The Commission terminated TCI's accreditation and notified TCI of its decision by letter dated June 12, 1986. The Commission specifically referred to the standards and policies which had been violated. The June 12 letter also set forth and enclosed copies of the appeal procedures. Plaintiff sent NHSC a letter on June 20, 1986, stating its intention to appeal.

On June 27, 1986, the Commission notified the plaintiff that an appeal hearing had been scheduled for July 30, 1986 in Washington, D.C. Plaintiff was told that it would have twenty minutes in which to address the members of the Commission, and that the Commission would then have the opportunity to ask questions of the plaintiff. Plaintiff was also instructed to submit a written statement outlining the grounds for its appeal. Plaintiff was also notified that it had the right to be represented by legal counsel and to have a transcript made. On July 1, 1986, TCI notified NHSC that it would be represented at the appeal by Mr. Orr (President) and his two sons. At that time, Orr stated that he wished to have a transcript made of the presentation to the Commission.

On July 2, 1986, Orr forwarded ten copies of a written "appeal." Among other things contained in the appeal, the appeal recognized that TCI's district sales managers and sales representatives had violated NHSC standards with regard to advertis-

With the exception of its October 10, 1986 brief in response to defendants' motion, which does not specifically address Counts I, V, and IX, plaintiff has filed nothing in opposition to defendants' motion.

ing and promotion. Plaintiff set forth various steps which it allegedly was taking to prevent such problems in the future. On July 3, plaintiff was notified that the Commission had received TCI's appeal, and that a transcript would be made of the proceedings as requested. The Commission requested additional material from TCI on July 23, 1986. On July 24, 1986, Orr sent a letter to NHSC, stating that he did not want the hearing transcribed. He also submitted certain materials requested by the Commission. While not requested, TCI submitted its "revised sales manual."

On July 30, 1986, TCI's appeal was heard by the Accrediting Commission. At the time of the hearing, President Orr presented hand outs and other materials for the Commission's review. During the course of the hearing, Orr was asked whether or not the "revised sales manual" was being used by TCI. Orr stated that it was.[2] Orr was questioned about certain advertisements contained in the manual which violated NHSC standards. On August 1, 1986, TCI received a letter from the Commission informing it that the decision to terminate TCI's accreditation had been affirmed. The Commission stated that the decision was made after reviewing plaintiff's file, and after hearing the oral presentation by President Orr and his sons at the appeal hearing. The examining Committee chairman's report, the school's response to that report, the written grounds for appeal, and the "sales manual" and promotional materials which had been submitted by the plaintiff to the Commission were all contained in the file which was considered by the Commission. In its August 1, 1986 letter, the Commission stated that, based "upon a full review of the records, your oral presentation to the Commission, and your responses to questions, the Accrediting Commission determined that the information presented and already

on the record substantiated the Commission's June 6 decision to terminate accreditation."

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26

---

**2.** There is no dispute that the "revised sales manual" was not merely a proposed manual but was actually being used by TCI at the time the appeals hearing was held. Michael Lambert, Assistant Director of the NHSC, testified in his affidavit that President Orr specifically stated at

the appeals hearing that the manual was being used. In view of Lambert's affidavit no genuine issue of material fact is raised by TCI, which rests on mere allegations or denials not supported by affidavit or otherwise. *See* Fed.R. Civ.P. 56(e).

L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union*, 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood*, 426 U.S. 341, 348 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976).

## PLAINTIFF'S CLAIMS

[1] Before going on to consider each of plaintiff's claims individually, the court notes that Counts I, III, IV, IX and XI share a common defect. They erroneously rely on the United States Constitution. Count I, for example, alleges that TCI has been denied accreditation in violation of "due process requirements under the Fifth Amendment to the United States Constitution." It is fundamental that the constitution does not extend its protection to those who have been injured by private conduct. This fundamental rule manifests itself in the "state action" requirement. Since NHSC's accreditation function does not constitute "state action," the constitution does not afford protection.

In *Parsons College v. North Central Association of Colleges and Secondary Schools*, 271 F.Supp. 65, 70 (N.D.Ill.1967), a case often cited by courts grappling with issues involving accreditation, this issue was squarely addressed. The court held:

> Invoking a claim of due process, the college draws no support from the commands of the federal Constitution, as contained in either the fifth or fourteenth amendment. By their terms, these constitutional guarantees control only the action of government. Designed to guard the individual against the overwheening power of the state, they do not control the voluntary arrangements or relations of private citizens in their private dealings with each other. Here there is no suggestion that the association is an arm of the government, making its acts the action of the state. With a corporate charter granted under general law, the association stands on the same footing as any private corporation organized for profit or not. *The fact that the acts of the association in granting or denying accreditation may have some effect under governmental programs of assistance to students or colleges does not subject it to the constitutional limits applicable to government*, any more than a private employer whose decision to hire or fire may affect the employee's eligibility for governmental unemployment compensation. The termination of membership in a private association, organized to maintain the standards in a professional calling, do not, therefore, present a federal question.

*Parsons College*, 271 F.Supp. at 70 (emphasis added). *See also National Association of Sporting v. F.T.L. Marketing*, 779 F.2d 1281, 1284 n. 6 (7th Cir.1985) (citing *Parsons College*). The plaintiff has not cited, and the court has not found, any persuasive authority to suggest that NHSC's accreditation function constitutes state action.[3]

---

**3.** The only decision holding that an accrediting body's function constitutes state action was reversed on appeal. *See Marjorie Webster Junior College v. Middle States Ass'n.*, 302 F.Supp. 459 (D.D.C.1969), *rev'd*, 432 F.2d 650 (D.C.Cir.1970), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). On appeal, the court re-

fused to decide the question, as did the court in *Marlboro Corp. v. Ass'n. of Independent Colleges and Schools*, 556 F.2d 78, 79–80 (1st Cir.1977). In an unpublished opinion, *Medical Institute of Minnesota v. National Association of Trade and Technical Schools*, Civil No. 3–84–269 at 5–7 (U.S.D.C.D.Minn. May 20, 1986), a federal dis-

Accreditation duties have traditionally been the exclusive function of private entities like NHSC, rather than government entities. In *Rendell-Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982) (involving a special education program for maladjusted high school students), the Court held that a private organization is engaged in state action if it performs a "public function" that has traditionally been the exclusive prerogative of the state. *Id.* Accreditation duties have not traditionally been the exclusive function of the state. Moreover, the mere fact that a business is subject to state regulation does not convert its action into state action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In *Blume v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982), the Court held that state action does not exist unless the state is responsible for a private organization's conduct. The Court noted that "a state normally can be held responsible for private decisions only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." *Id.*

■ It is true that NHSC is subject to "recognition procedures for national accrediting bodies and state agencies." *See* 20 U.S.C. § 1085(b) and 34 C.F.R. § 603.1, *et seq.* It is also true that TCI's accreditation by NHSC is a prerequisite to its eligibility for federal financial assistance. However, "Mere approval of or acquiescence in the initiatives of a private party" by a state nor the fact that the state responds to a private organization's actions by adjusting funding makes the state "responsible" for those actions. *Blum,* 457 U.S. at 1004–05, 102 S.Ct. at 2786. As the court held in *Parsons College,* the fact that

trict court granted a defendant's motion for summary judgment and squarely held that denial of accreditation by the National Association of Trade and Technical Schools did not constitute "state action."

an accrediting association's decision in granting or denying accreditation may have some effect under governmental programs does not give rise to state action.[4]

■ TCI's reliance on constitutional law is not the only general defect in its complaint. In this suit for injunctive relief, declaratory relief, and damages, plaintiff also relies on the Code of Federal Regulations, alleging violations of that Code. For example, in its fourth count, TCI alleges that termination of its accreditation was based on grounds not fully disclosed, in violation of ... 34 C.F.R. § 603.6(b)(3). In essence, TCI asks this court to reinstate its accreditation because NHSC allegedly did not comply with the standards outlined in the above-cited provision of the Code of Federal Regulations. Even assuming, however, that NHSC violated this provision, that violation would not entitle TCI to have its accreditation reinstated. It would only mean that NHSC had failed to meet the standards entitling it to recognition by the Secretary of Education. 34 C.F.R. § 603.6.

In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Supreme Court addressed the issue of standing. The Court held, "When a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is *likely to be redressed by a favorable decision.* Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Article III (case or controversy) limitation." *Id.* at 38, 96 S.Ct. at 1924 (emphasis added). In *Simon,* the court rejected plaintiff's claim on the grounds that the impact of the requested remedy on plaintiff's harm was speculative. *Id.* at 45, 96 S.Ct. at 1927.

4. Powerful policy reasons support the decision in *Parsons College.* American traditions of academic freedom militate against imposing constitutional obligations upon private accrediting bodies. To do so would undermine the independence of those bodies from governmental control.

In the case at bar, if this court decided that NHSC had indeed violated the Code of Federal Regulations, the only result would be that NHSC should not be recognized by the Secretary of Education as an accrediting agency. Removal of the Secretary's recognition of NHSC would not make TCI an accredited institution. Thus, TCI lacks standing to raise the issue of NHSC's compliance with the Code of Federal Regulations. *See e.g., Louisiana School of Professions v. William Bennett,* Civil Action No. 86–0328 at 10–12 (W.D.La. Mar. 17, 1986) (unpublished order), *aff'd,* 791 F.2d 929 (5th Cir.1986) (unpublished opinion). Hence, the plaintiff's reliance on the Code of Federal Regulations is misplaced.

While, as noted above, the state action requirement may bar plaintiff's constitutional claims, and while plaintiff may not have standing to raise the alleged violations of the Code of Federal Regulations, these issues may be avoided if NHSC is in compliance with the constitution and the Code of Federal Regulations. Generally, federal courts should avoid constitutional issues if some other ground for a decision exists which would resolve the questions. *See e.g., Ashwander v. TVA,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, Dray, concurring). In this case, non-constitutional grounds for a decision exist. As the court's subsequent analysis of each count of the plaintiff's complaint will show, defendants have satisfied constitutional requirements of due process and equal protection and are not in violation of the Code of Federal Regulations.

5. Under 34 C.F.R. § 603.6(a)(3), NHSC is required to have clearly written procedures for denying, reaffirming ... accreditation, and is required to conduct an on-site review. The documents contained in group exhibit C manifest the clarity of NHSC's standards. It is undisputed that an on-site review was conducted. Under 34 C.F.R. § 603.6(b)(ii) (sic) (actually 34 C.F.R. § 603.6(b)(2)), the NHSC must include representatives of the public in its decision-making bodies, must make publicly available its evaluation standards, its procedures for arriving at accreditation decisions, the current accredita-

## PLAINTIFF'S CLAIMS

### I. Count I of the Plaintiff's Complaint

In Count I of its complaint, the plaintiff alleges that NHSC standards are indefinite and unconstitutionally vague. TCI alleges that NHSC does not have clearly written procedures for granting, denying, reaffirming, revoking or reinstating accreditation, and that as a result, it was denied accreditation in violation of the United States Department of Education Regulations, the common law, and constitutional due process requirements under the fifth amendment.

There are no genuine issues of material fact relating to NHSC's accreditation standards. In its August 1, 1986 letter affirming the termination of the plaintiff's accreditation, the Commission specifically referenced several documents and standards of NHSC, the violation of which had formed the basis for NHSC's decision to terminate plaintiff's accreditation. These documents and standards covered areas including advertising and promotion, control of field staff, demonstrated operation, business standards, advertising and promotional literature, and recruiting, training and control of sales representatives. The very same documents and standards were referenced by the Commission in its June 12, 1986 letter to TCI, notifying TCI of the original termination of its accreditation. Plaintiff's argument that these standards are in violation of 34 C.F.R. § 603.6(a)(3) or § 603.6(b)(2)[5] does not deserve serious attention.

In determining whether NHSC standards are "indefinite" or "unconstitutionally vague" under the "common law" or "the

tion status of its institutions, the names and affiliations of members of its decision-making bodies, and a description of ownership and control. It must also provide advance notice of all revised standards affecting those accreditations, and it must have written procedures for reviewing complaints pertaining to institutional quality. While plaintiff has not specified any portion of this regulation which it claims the NHSC violated, the record indicates without any dispute that the court has been able to discover, that the NHSC complied with these standards.

fifth amendment," the court must extend deference to NHSC's expertise. *Marjorie Webster Junior College, Inc. v. Middlestates Association of Colleges and Secondary Schools*, 432 F.2d 650 (D.C.Cir.1970), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). In *Rockland Institute v. Association of Independent Colleges*, 412 F.Supp. 1015 (C.D.Cal.1976), the plaintiff (a business school) alleged that an accreditation association's standards were "vague." In granting the accreditation association's motion for summary judgment, the court held, quoting *Parsons College*, 271 F.Supp. at 65, that the association's standards were sufficient to guide professionals in the field of education.

> In its attacks on standards, claiming them to be nebulous, the college relies upon decisions holding statutes to be unconstitutional on the ground that they are so vague as to be unintelligible to men of ordinary intelligence [the constitutional argument]. *The authority is inapposite. The standards of accreditation are not guides for laymen, but for professionals in the field of education. Definiteness may prove, in another view, to be arbitrariness.* The association was entitled to make a conscious choice in favor of flexible standards to accomodate variation in purpose and character among its constituent institutions, and to avoid forcing all into a rigid and uniform mold.

*Rockland Institute*, 412 F.Supp. at 1018 (emphasis added). The court went on to hold that the matter of accreditation is best left to the professional judgment of those in the field of education. *Id.* This court agrees. NHSC's standards, as contained in group exhibit C, are sufficiently definite to guide professionals in the field of accreditation.

## II. Count III of Plaintiff's Complaint

■ In Count III of its complaint, TCI alleges that the Commission reviewed evidence during the appeals hearing which had not been submitted by TCI for the appeal proceeding. Plaintiff further alleges that NHSC failed to notify it that the additional evidence would be reviewed, all in violation of 34 C.F.R. §§ 603.6(a)(3) and 603.6(b)(2), and constitutional and common law due process (in that TCI was deprived of a fair hearing). This count essentially concerns the Commission's consideration of TCI's "revised sales manual." [6] The question before the court is whether the Commission violated TCI's "due process" rights in considering TCI's "revised sales manual," which was being used by the plaintiff at the time of the appeals proceeding.

TCI alleges that NHSC violated its "common law due process in that it deprived the school of a fair hearing" by considering the revised sales manual. A similar "lack of fairness" argument was considered by the court in *North Jersey Sec. Sch. v. National Association of Trade*, 597 F.Supp. 477, 480–81 (D.C.D.C.1984). With regard to the "common law" (non-constitutional claim), the court held:

> NATTS [the accrediting agency] provided plaintiffs with ample notice to enable them to prepare; a detailed written complaint was provided. Plaintiffs had repeated opportunities to present evidence and argument in writing; plaintiffs were afforded an oral hearing with the assistance of counsel. Finally, plaintiffs were given the opportunity to appeal both orally and in writing.

*North Jersey*, 597 F.Supp. at 480–81. In granting the accrediting agency's motion for summary judgment, the court reasoned that the treatment outlined above satisfied the contours of due process. *Id.* at 481. The undisputed facts show that plaintiff had ample notice to prepare, received a detailed written report, responded to the report both orally and in writing, presented argument on its behalf, attended an oral hearing, and had the opportunity to be

---

**6.** Count IV of plaintiff's complaint relates to advertising violations considered by the NHSC, which plaintiff allegedly had no notice of. That count will be considered in "Plaintiff's Claims, Part 3," *infra*. The court reiterates (*see* note 2) that no factual dispute exists as to whether the revised sales manual was being used by TCI at the time of the hearing.

represented by counsel. TCI received a fair hearing under "common law" standards.

During the appeal process, TCI submitted its revised sales manual. During the appeal hearing, President Orr responded to questions regarding the sales manual. The Commission's consideration of TCI's revised sales manual, in view of the fact that it was voluntarily submitted, and in view of the fact that plaintiff was afforded an opportunity to respond to questions concerning the manual at the appeal hearing, does not offend "common law" standards of fairness in any way.

Constitutional due process (assuming state action and assuming some legitimate claim of entitlement to a protected property interest) was also afforded the plaintiff. In a similar case, *Marlboro Corp. v. Association of Independent Colleges*, 556 F.2d 78, 81 (1st Cir.1977), the court held that the process due a school by an accrediting agency denying accreditation, whether measured against constitutional or common law standards, is flexible. *Id.* The court reasoned that whether procedural due process standards have been satisfied is a question that must be determined on a case by case basis. *Id.* at 81–82. In *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court held that although social security benefits constitute a statutorily creative property interest protected by the fifth amendment, due process does not require a *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)–type hearing prior to their termination. The Court held that the specific dictates of due process require consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Significantly, the Court went on to hold

that substantial weight should be given to the good faith judgment of individuals charged by Congress with the administration of the social welfare system that the procedures they have provided assure fair consideration of the entitlement claims of individuals. *Id.* There is probably no area of the law where deference is as necessary as it is when a court reviews the decision of an accreditation association like NHSC. *See e.g., Parsons College,* 271 F.Supp. at 65; *Rockland Institute,* 412 F.Supp. at 1018.

An analysis of the *Matthews* factors reveals that TCI was afforded constitutional due process. TCI's interest is the loss of its accreditation and the effect that the loss will have on its ability to obtain federal funding. The risk that TCI's accreditation was erroneously withdrawn because NHSC considered its sales manual is very small. More importantly, the probable value of additional procedural safeguards (some additional procedure allowing TCI to further respond to NHSC's concerns regarding the sales manual) is very low. The last factor (the government's interest) does not apply. In considering these factors, the court holds that NHSC's consideration of the revised sales manual did not violate any due process rights that TCI may have.

As a practical matter, plaintiff's claim that NHSC unfairly considered its "revised sales manual" makes very little sense. President Orr's letter of July 24, 1986 (transmitting the sales manual) described the sales manual as something the plaintiff had "rushed to complete and use for training any new agents and retraining older agents." When questioned during the appeals hearing about advertising violations contained in the sales manual, President Orr described the violations as "a mistake." While the court is fully aware that the sales manual was "proposed" in the sense that plaintiff intended to make revisions, the record establishes that the manual was being used at the time of the hearing. In view of the voluminous correspondence between TCI and NHSC regarding advertising violations, and in view of the violations

contained in a manual being used by TCI at the time that TCI was appealing a decision directly relating to advertising violations, it would be preposterous for this court to hold that TCI was not afforded a fair hearing because the Commission considered a document further illustrating TCI's noncompliance with NHSC's advertising standards. Consideration of the sales manual did not violate "common law" due process, constitutional due process, or the Code of Federal Regulations.[7]

### III. Count IV of Plaintiff's Complaint

█ In Count IV, TCI alleges that the defendants failed to give it adequate notice of the charges against it and adequate opportunity to respond to those charges. The complaint refers to the examining committee chairman's report on the examination of TCI, dated May 12, 1986, and alleges that thirty-one of the thirty-four recommendations made by the Committee did not reference any NHSC standards. In its response brief, plaintiff further alleges that NHSC had ad violations in its file which were never brought to the attention of TCI. TCI alleges that the Commission thus reached a decision without providing adequate notice and an opportunity to respond, in violation of 34 C.F.R. § 603.6(b)(3), common law due process, and constitutional due process. To meaningfully define the parameters of Count IV of plaintiff's complaint (i.e. to determine precisely how TCI was denied adequate notice), the court will undertake a rather lengthy but necessary review of the facts pertinent to Count IV.

TCI is not alleging that it had not notice or no opportunity to respond. The court's review of the undisputed facts, *supra,* indicate that TCI was on notice that its accreditation might be terminated, responded to the Committee's detailed report (which the court has thoroughly reviewed) in writing, was afforded an on-site inspection, and was afforded an appeal with an opportunity to respond in writing and orally. At the appeal, TCI had the right to counsel, and had the opportunity to have the transcript of the appeal hearing made. Since TCI is obviously not complaining that it had no notice or no opportunity to respond, the court must turn to the question: was TCI given *adequate notice* and an *adequate opportunity to respond?*

A review of the correspondence between TCI and NHSC reveals that TCI was given notice on many occasions that it had violated NHSC's business standards relating to advertising. The correspondence also shows that the specific standards violated by TCI were communicated to TCI on numerous occasions. The May 12, 1986 examining committee chairman's report outlined ten separate advertising violations.[8] It is also undisputed that NHSC sent TCI eight letters containing specific references to NHSC business standards violated by TCI.[9] It is further undisputed that NHSC sent TCI five additional letters notifying TCI of advertising violations, but not specifically referring to the standards violat-

---

**7.** In Count III, plaintiff alleges violations of C.F.R. 603.6(a)(3) and 603.6(b)(2). As discussed in note 5 *supra,* those regulations have been complied with.

**8.** Under part VIII of the May report, "Advertising and Promotion," it was pointed out to TCI that there were numerous *continuing* (since January of 1986) violations including: a) not clearly indicating both Home Study and Resident Training is required; b) incorrect reference to the availability of financial aid; c) incorrect reference to NHSC accreditation in ad copy and promotional literature; d) failure to fully disclose the complete address of the Home Office; e) placement of ads in employment columns; f) blind ads; g) use of the word "free"; h) certified instructors; i) advertising weekend training which is not available in Diesel Mechanics; and j) advertising the Diesel Mechanic course as an accredited course in West Coast publications. Accreditation of this course has not been issued.

**9.** Defendant points out that the eight letters (which the court has reviewed) contain a total of approximately twenty-five individual violations of NHSC standards. For example, the NHSC letter of November 6, 1985 references three separate advertisements and nine separate violations. In many instances the plaintiff's response was to concede the violations and apologize. For example, the March 7, 1985 letter from Lambert to TCI references three violations. Plaintiff's March 11, 1985 letter admits the violations.

ed.[10] TCI does not allege that it did not in fact violate NHSC standards with the advertisements referred to in these five letters. The real dispute centers around eight advertisements and a letter which NHSC had in its file, but never brought to the attention of TCI.[11] The court will assume that these violations were relied on by NHSC and not communicated to TCI. The court now turns to the question of whether NHSC's reliance on these advertisements amounts to a violation of common law due process, constitutional due process, or the Code of Federal Regulations.

"Common law" due process does not require that TCI be given notice of every particular advertisement relied on by NHSC. *Rockland Institute,* 412 F.Supp. at 1017–18; *Parsons College,* 271 F.Supp. at 72. In *Rockland,* the business school alleged that the accreditation association had not sufficiently informed them that the subject of adequate financial resources was going to be an issue. *Rockland,* 412 F.Supp. at 1017. Noting that the accreditation association had not specifically stated that the school would be required to present evidence of adequate financial resources, the court held that the school was well aware that information concerning its financial resources would be required at the remediation hearing. *Id.* at 1018. Similarly, in *Parsons College,* plaintiff alleged that it had no notice that its accreditation was in jeopardy until late in the proceedings. *Parsons College,* 271 F.Supp. at 72. The court held that "the visit of the examining team was adequate notice without more." *Id.* Pursuant to the holdings in *Rockland* and *Parsons College,* there can be no doubt that TCI's "common law" right to notice was not violated.

Not only was TCI well aware that its accreditation was being reviewed, it was also well aware that a critical part of the review related to its numerous violations of NHSC's business standards for advertising. TCI itself acknowledges receipt of eight letters containing specific references to advertising violations and to NHSC standards. TCI also acknowledges receipt of five letters also referencing advertising violations. All told, TCI had been made aware of approximately thirty-eight separate violations of NHSC standards contained in those thirteen letters. TCI received more than adequate notice that its advertisments[12] were in violation of NHSC standards; TCI clearly received "common law" due process.

TCI also received constitutional due process with regard to adequate notice. In *Marlboro Corp. v. Association of Independent Colleges,* 556 F.2d 78, 81–82 (1st Cir.

10. The court has reviewed these five letters. Each of these letters either referred to (or had enclosed) the advertisement which violated NHSC standards. Some of the violations were obvious. For example, the April 19, 1985 letter referenced an advertisement in the *San Diego Union* which contained the word "guarantee." NHSC Business Standard I(A)(8)(b) prohibits the use of the word "guarantee" for advertising or promotional purposes. The court notes that these five letters contain references to approximately thirteen additional advertisement violations.

11. Defendant contests the affidavit testimony of President Orr; namely, that he was not aware of these violations until he examined group exhibit A on October 4, 1986. As defendant points out, Orr's testimony is not consistent with the record. TCI claims, for example, that it never received a letter from Mr. Collins of Superior Training Services, which pointed out an advertising violation in the *Indianapolis Star.* However, shortly after receipt of this letter Mr. Lam-

bert sent Orr a copy of the same advertisement. Mr. Harriss (TCI's Vice President of marketing) responded on May 23, 1985, stating that the advertisement had been corrected. In spite of this and other inconsistencies in plaintiff's position, the court will draw all the inferences in favor of TCI, *see Peoples Outfitting Co. v. General Electric Credit Corp.,* 549 F.2d 42 (7th Cir. 1977), and assume that TCI had no notice that the advertisements were in NHSC's file.

12. It is important to note that the "lack of notice" claim relates to advertisements. In view of the huge number of advertisements violating NHSC standards, the correspondence between TCI and NHSC relating to those violations, and the report itself, which outlined numerous continuing violations, TCI's claim is specious. TCI cannot seriously argue that there was any procedural error so substantial and prejudicial that its accreditation was unfairly removed. *See e.g., Shidaker v. Carlin,* 782 F.2d 746, 752 (7th Cir.1986).

1977), the court held that where the accreditation process is measured "against constitutional or common law standards, current doctrine teaches that procedural fairness is a flexible concept, in which the nature of the controversy and the competing interests of the parties are considered on a case by case basis." In view of the fact that TCI's inadequate notice claim relates to advertising violations, and in view of the fact that it had received abundant notice of various advertising violations (some continuing in nature), it is impossible to conceive that TCI was denied constitutional due process, as that process is explained in *Marlboro.* If the court were to apply the standards of *Matthews v. Eldridge, supra,* it could not be disputed that there would be little if any value of additional procedural safeguards. That is because TCI's advertising practices continued to violate NHSC standards even after TCI had been notified of its violations on numerous occasions.

There is an additional and independent reason for the failure of TCI's constitutional claim. If the notice TCI received regarding its advertising violations was inadequate, the purpose of more adequate procedures would be to allow TCI to refute the alleged violations. TCI, however, has not even alleged that the advertisements not disclosed to it comply with NHSC's business standards. To hold that TCI was denied constitutional due process because it had not been notified of advertisements considered by NHSC, which in fact violated NHSC standards, would be to decide this case in a vacuum. *See e.g., Codd v. Velger,* 429 U.S. 624, 630, 97 S.Ct. 882, 885, 51 L.Ed.2d 92 (1977). TCI's failure (and inability in view of the record) to raise any question that it had violated NHSC's business standards on numerous occasions precludes it from seriously claiming lack of notice. Lastly, the court is convinced that NHSC did not violate 34 C.F.R. § 603.-6(b)(3).[13]

**13.** That section relates to due process. It provides for adequate discussion during an on-site visit, a written report, an opportunity to comment, a statement of reasons for adverse action,

### IV. Count V of Plaintiff's Complaint

In Count V, TCI alleges that the Commission's decision to terminate its accreditation is not supported by substantial evidence. TCI alleges that defendants acted in an arbitrary and capricious manner, in violation of TCI's right to "common law" due process and constitutional due process. In this count, TCI questions the adequacy of the reasons given for withdrawing its accreditation. In determining whether NHSC's decision is supported by substantial evidence, the court must afford deference to NHSC's decision to keep from being entangled in the substantive issues. *Parsons College,* 271 F.Supp. at 74. NHSC's decision is supported by substantial evidence. That evidence consists, for example, of the numerous well documented advertising violations by TCI.

### V. Count IX of Plaintiff's Complaint

In Count IX of the complaint, TCI alleges that it was treated differently and more severely than other similarly situated schools, in violation of its right to equal protection. Assuming that plaintiff is entitled to constitutional protection (assuming state action and a legitimate claim of entitlement to a protected property interest), plaintiff's claim must fail. An equal protection claim by definition requires the court to make a comparison between two similarly situated people, or in this case, schools. This would amount to a determination by this court that NHSC was incorrect in its evaluation of TCI, which would take this court beyond the proper scope of review, which does not include *de novo* review of NHSC's evaluative decisions. *Rockland Institute,* 412 F.Supp. at 1019. This issue was discussed in *Marlboro Corp.,* 556 F.2d at 80 n. 2:

> The claim that it [the school] was denied equal protection because the commission granted accreditation to schools in equally poor financial condition, or with equal-

notice of the right to appeal, and rules for appeal. The record clearly establishes NHSC's compliance with these regulatory standards.

ly poor library facilities, really amounts to a claim that the commission was incorrect in its evaluation of either Emory or the other schools. Whatever may be the proper scope of judicial monitoring of associations like AICS, it does not include de novo review of their evaluative decisions.

This court is not in a position to determine whether TCI was treated less favorably than some other school, to-wit: Superior Training Services. NHSC is therefore entitled to summary judgment on TCI's equal protection claim.

### VI. Count XI of Plaintiff's Complaint

■ In Count XI, plaintiff alleges that NHSC is a quasi-public organization with a fiduciary duty to the public at large, the school, and the school's prospective students. Courts have recognized that there is a common law fiduciary duty to follow fair procedures reasonably related to legitimate purposes. *Marlboro Corp.*, 556 F.2d at 79. *See also Rockland Institute*, 412 F.Supp. at 1015; *Falcone v. Middlesex County Medical Society*, 34 N.J. 582, 170 A.2d 791 (1961). Assuring compliance with NHSC's business standards relating to advertising, and maintaining other minimum standards for educational institutions, are legitimate purposes.

As discussed in "Plaintiff's Claims Parts I through V," NHSC has satisfied "common law" standards. NHSC has followed its own rules and the Code of Federal Regulations in every respect. Its standards are not unconstitutionally vague. TCI was given notice and an opportunity to respond, both orally and in writing. TCI was afforded all the protections of a proper appeal and the Commission's ultimate decision was supported by substantial evidence. Thus, NHSC has fulfilled its common law duty to follow fair procedures reasonably related to legitimate purposes.

### CONCLUSION

There are no genuine issues of material fact. Defendants are entitled to judgment as a matter of law on each of the plaintiff's counts for the reasons set forth above. Summary judgment is therefore ORDERED for defendants on each count of plaintiff's complaint.